

# SUPREME COURT OF MISSOURI
## en banc

EDWARD L. HOEBER, )
)
            Appellant, )
)
v. ) No. SC95079
)
STATE OF MISSOURI, )
)
            Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### The Honorable Daniel F. Kellogg, Judge

*Opinion issued May 3, 2016*

Edward L. Hoeber was convicted of two counts of statutory sodomy in the first degree, section 566.062.[1]  Mr. Hoeber subsequently filed a Rule 29.15 motion for post-conviction relief alleging that his trial counsel was ineffective for failing to object to verdict directors that violated his constitutional right to a unanimous jury verdict and for failing to hire an expert to testify at the sentencing hearing.  The motion court concluded that trial counsel's failure to object to the verdict directors did not prejudice Mr. Hoeber because no risk existed that the jurors were misled about which incident of abuse applied to each particular count of statutory sodomy.  The motion court further concluded that trial counsel was not ineffective for failing to hire an expert to testify at Mr. Hoeber's

---

[1] Unless otherwise noted, all statutory citations are to RSMo Supp. 2007.

sentencing hearing. The motion court overruled Mr. Hoeber's motion for post-conviction relief.

The two verdict directors submitted in Mr. Hoeber's case both failed to identify a specific act or incident of abuse despite testimony at trial regarding multiple incidents of Mr. Hoeber inappropriately touching S.M., the victim. Given the evidence of multiple acts or incidents of abuse introduced at trial and the state's emphasis on such evidence in its closing argument, the non-specific verdict directors created a risk that the jurors did not unanimously agree as to the acts for which they were finding Mr. Hoeber guilty. A reasonable probability exists, therefore, that both verdict directors in this case misled or misdirected the jury in such a way that affected the verdicts. Accordingly, trial counsel's failure to object to the erroneous verdict directors prejudiced Mr. Hoeber.

Moreover, a reasonably competent attorney would have objected to, or requested the modification of, the two insufficiently specific verdict directors to protect Mr. Hoeber's right to a unanimous jury verdict. At the time of Mr. Hoeber's trial, the MAI notes on use addressed the significance of modifying verdict directors in multiple acts cases, and it was well-established Missouri law that the verdict must be definite and certain as to the crime of which the accused is found guilty. The fact that *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), had yet to be decided at the time of Mr. Hoeber's trial does not excuse trial counsel's failure to object to the two erroneous verdict directors. Consequently, because no reasonable trial strategy existed for trial counsel's failure to object to the non-specific verdict directors, trial counsel's performance fell outside the wide range of professional, competent assistance.

Accordingly, Mr. Hoeber established that his trial counsel was ineffective for failing to object to two insufficiently specific verdict directors, and the motion court clearly erred in overruling Mr. Hoeber's Rule 29.15 motion for post-conviction relief. This Court reverses the motion court's judgment and remands this case.

**Factual and Procedural Background**

S.M. was born in 2003. In 2004, S.M.'s mother began dating Mr. Hoeber, who moved in with the family soon thereafter. Mr. Hoeber and S.M's mother ended their romantic relationship in 2005. Nevertheless, Mr. Hoeber continued to live with the family intermittently through 2007.

In July 2007, S.M., her mother, and Mr. Hoeber were living in a one-bedroom apartment in St. Joseph. S.M.'s mother had increasing health problems that caused her to spend the majority of the day sitting in a recliner in the living room. Because of her health problems, she was unable to care for S.M. As a result, Mr. Hoeber prepared S.M.'s meals, bathed and dressed S.M., and helped S.M. use the bathroom. While Mr. Hoeber was taking care of S.M., she was diagnosed with a vaginal infection. Because S.M.'s mother was unable to apply the medication, Mr. Hoeber applied it to S.M.'s genitals using his finger.

By September 2007, Mr. Hoeber was no longer living at the apartment, and S.M. was placed in foster care. While in foster care, S.M. told her foster mother that Mr. Hoeber had touched her. After the disclosure, S.M. began seeing a child therapist. S.M. told the therapist that Mr. Hoeber had touched her "private area."

3

By January 2008, S.M. had returned to living with her mother. One night, S.M. began talking in her sleep saying "Stop it! Stop it!" When S.M.'s mother woke her, S.M. said "Eddie hurt me." When questioned further, S.M. said that Mr. Hoeber had touched her "pee-pee" and demonstrated to her mother how he had touched her genitals. S.M.'s mother called the police.

Mr. Hoeber was charged with two counts of first degree statutory sodomy.[2] When questioned, Mr. Hoeber originally denied touching S.M. inappropriately and requested that a lie detector test be administered. Detective Scott Coates of the Buchanan County sheriff's office prepared Mr. Hoeber for the lie detector test. While doing so, Detective Coates asked Mr. Hoeber if there was anything Mr. Hoeber was not telling him and that, if there were, Mr. Hoeber should tell him before the test. Mr. Hoeber eventually admitted to touching S.M. in the bathroom on two separate occasions. Detective Coates transcribed Mr. Hoeber's admission in a statement that Mr. Hoeber then signed.

In 2009, the case proceeded to trial. S.M. testified that Mr. Hoeber touched her private area and her butt with his hand more than one time. When asked what room she was in when the touching occurred, S.M. stated it was in the kitchen. S.M. went on to testify that no touching occurred in the bedroom, the bathroom, or the living room.

S.M.'s mother also testified at trial. She explained that S.M. had told her that the touching occurred more than one time. She further testified that S.M. told her the touching occurred in the kitchen and the bedroom.

---

[2] Mr. Hoeber was also charged with two counts of first degree child molestation, section 566.067. These charges, however, were dismissed at trial.

4

The state offered additional testimony from S.M.'s therapist. The therapist testified that she first saw S.M. in September 2007. During that visit, S.M. told the therapist that Mr. Hoeber had touched her, then immediately stated "No, he doesn't." At a later visit, S.M. told the therapist that she "needed to tell [the therapist] a secret." S.M. then disclosed that Mr. Hoeber had touched her private area with his hand while she was in the bedroom. In subsequent visits, S.M. disclosed that Mr. Hoeber had touched her private area with his hand on more than one occasion. In describing the touchings, S.M. told the therapist they had occurred in the bedroom, the kitchen, the bathroom, and the living room.

Detective Coates then read Mr. Hoeber's statement into evidence. The statement provided:

> I, Edward Hoeber, state that I dated [S.M.'s mother] for about one year. I lived with [S.M.'s mother] in 2004, this is December, to September 2005. Then I would say I have lived with [S.M.'s mother] off and on since December of 2004. I came to jail in August of 2007.[3]
>
> During the time I lived with [S.M's mother], she would have me take care of her daughter, [S.M.]. I would give her a bath and sometimes wipe after she got done in the bathroom. [S.M.] was 4. She will be 5 next month.
>
> About a month before I got arrested, we were living at 619 North 9th. Around that time, there were two times I touched [S.M.] inappropriately. There were two times where [S.M.] was in the bathroom and had gotten off the toilet with her pants down.
>
> Before she would pull her pants up, I would rub her clitoris with my fingers. She would kind of laugh. I would rub her for about two minutes or so. [S.M.'s mother] would be sitting in the front room. I never told her anything about this. As far as I know, [S.M.'s mother] never knew. I only did it the two times. I am sorry for what I did. I really need help.

---

[3] Mr. Hoeber's arrest and jail time in August 2007 were unrelated to the present case.

Testifying on his own behalf, Mr. Hoeber denied touching S.M. inappropriately and explained that his confession was coerced by Detective Coates.

At the close of evidence, the trial court instructed the jury on two counts of first degree statutory sodomy. Mr. Hoeber's trial counsel did not object to either verdict director submitted to the jury. The jury found Mr. Hoeber guilty on both counts, and the trial court sentenced Mr. Hoeber, as a prior offender, to 40 years on each count to run consecutively. Trial counsel presented no witnesses on Mr. Hoeber's behalf at the sentencing hearing. Mr. Hoeber's conviction was affirmed on direct appeal. *State v. Hoeber*, 341 S.W.3d 195 (Mo. App. 2011).

On March 24, 2010, Mr. Hoeber filed his *pro se* motion for post-conviction relief pursuant to Rule 29.15. In his amended Rule 29.15 motion, Mr. Hoeber claimed that his trial counsel was ineffective for failing to object to the verdict directors, which he alleged violated his constitutional right to a unanimous jury verdict. Mr. Hoeber further claimed that his trial counsel provided ineffective assistance at the sentencing hearing by failing to hire an expert to present evidence regarding the mitigating effect of Mr. Hoeber's mental conditions.

On May 3, 2013, the motion court conducted an evidentiary hearing. Trial counsel testified that he did not consider objecting on the basis that the verdict directors failed to specify a particular incident or place in which the touchings occurred. He further testified that he had no trial strategy for failing to object to the verdict directors. Dr. William Geis also testified at the evidentiary hearing regarding Mr. Hoeber's mental condition and whether Mr. Hoeber was likely to be a repeat offender.

6

On September 25, 2013, the motion court entered its findings of fact, conclusions of law, and judgment in which it overruled Mr. Hoeber's motion for post-conviction relief. In doing so, the motion court concluded that Mr. Hoeber did not establish that he was prejudiced by his trial counsel's failure to object to the verdict directors because there was no risk that the jurors would be misled about which incidents of abuse applied to a particular count. The motion court also concluded that Mr. Hoeber failed to establish that the outcome of the sentencing would have been different had Mr. Hoeber's trial counsel hired Dr. Geis to testify.

Mr. Hoeber appealed. After a decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Standard of Review

This Court's review of a motion court's overruling of a motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A motion court's findings and conclusions are "clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made." *Mallow v. State*, 439 S.W.3d 764, 768 (Mo. banc 2014).

## The Verdict Directors Failed to Ensure Unanimous Jury Verdicts

In his first point, Mr. Hoeber claims that trial counsel was ineffective for failing to object to the verdict directors submitted on the two counts of statutory sodomy in the first degree. Mr. Hoeber asserts that the verdict directors in this case violated his constitutional right to a unanimous jury verdict in that the verdict directors failed to

7

specify a particular incident or act of hand-to-genital contact despite evidence of multiple acts of hand-to-genital contact being introduced at trial.

The Missouri Constitution provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate[.]" Mo. Const. art. I, sec. 22(a). This Court has held that article I, section 22(a) protects a defendant's right to a unanimous jury verdict. *State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991). "For a jury verdict to be unanimous, the jurors must be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." *Celis-Garcia*, 344 S.W.3d at 155 (internal quotation omitted).

In *Celis-Garcia,* this Court addressed the right to a unanimous verdict in the context of a multiple acts case.[4] *Id.* at 155-58. The defendant in *Celis-Garcia* was charged with two counts of statutory sodomy. *Id.* at 152. At trial, the two victims testified about multiple incidents of abuse occurring in different locations. *Id.* at 153. Two verdict directors – one for each victim – instructed the jury that if it believed the defendant had committed the act constituting statutory sodomy between the charged dates, it must find the defendant guilty of statutory sodomy. *Id.* at 154-55. Besides the charged dates, the verdict directors did not specify a particular location or otherwise identify the incident of statutory sodomy the defendant had allegedly committed. *Id.* at 154.

In vacating the defendant's convictions, this Court explained:

---

[4] "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56.

8

> Despite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted [the defendant] of the same act or acts. . . . This broad language allowed each individual juror to determine which incident he or she would consider in finding [the defendant] guilty of statutory sodomy. Under the instructions, the jurors could convict [the defendant] if they found that she engaged or assisted in hand-to-genital contact with the children during an incident in her bedroom, *or* on the enclosed porch, *or* in the shed, *or* in the bathroom.

*Id.* at 156 (emphasis in original). This Court then found that, because there was evidence of multiple, separate incidents of statutory sodomy committed against both victims and any of them would have supported the charged offenses, it was "impossible to determine whether the jury unanimously agreed on any one of these separate incidents." *Id.* at 158. Accordingly, this Court concluded that "the verdict directors violated [the defendant's] constitutional right to a unanimous jury verdict[.]" *Id.* This Court then determined that the trial court plainly erred in failing to properly instruct the jury because the "verdict directors misdirected the jury in a way the affected that verdict, thereby resulting in manifest injustice." *Id.* at 159.

Similar to the situation in *Celis-Garcia*, evidence of multiple acts of hand-to-genital contact, each of which would constitute the commission of the offense of statutory sodomy, was presented at Mr. Hoeber's trial. S.M. testified that Mr. Hoeber touched her private area and butt with his hand more than one time in the kitchen. She further testified that Mr. Hoeber did not touch her inappropriately in the bedroom, bathroom, or living room. S.M.'s mother, however, testified that S.M. told her the touching occurred in the bedroom and the kitchen more than one time. The therapist offered additional testimony regarding the incidents of hand-to-genital contact S.M. disclosed during their

9

therapy sessions. The therapist testified that S.M. had reported being touched in the bedroom, kitchen, living room, and bathroom on more than one occasion. Mr. Hoeber's statement in which he admitted to touching S.M.'s genitals twice in the bathroom was also read into evidence. Mr. Hoeber then testified that he had not touched S.M. and that his statement was coerced.

Despite the conflicting evidence presented at trial of multiple acts of hand-to-genital contact, neither verdict director specified a particular room or incident. Instead, two counts of statutory sodomy were submitted to the jury – Instruction No. 8 and Instruction No. 10. Instruction No. 8 reads:

> As to Count I, if you find and believe from the evidence
>
> First, that between July 1, 2007 and August 29, 2007, in the County of Buchanan, State of Missouri, [Mr. Hoeber] knowingly touched the genitals of S.M. with his hands,
>
> and
>
> Second, that such conduct constituted deviate sexual intercourse,
>
> and
>
> Third, that at the time S.M. was a child less than twelve years old, then you will find [Mr. Hoeber] guilty under Count I of statutory sodomy in the first degree.
>
> . . . .

Instruction No. 10 contained the identical language except for references to Count II.

Because the verdict directors failed to identify any specific incident or room in which the conduct occurred, the verdict directors allowed each individual juror to determine which incident he or she would consider in finding Mr. Hoeber guilty on each

10

count of statutory sodomy. Under each verdict director, each juror could have found Mr. Hoeber guilty of engaging in hand-to-genital contact with S.M. during an incident in the kitchen *or* in the bathroom *or* in the living room *or* in the bedroom. The verdict directors, therefore, created a real risk that the jurors did not unanimously agree on the specific acts of statutory sodomy for which they found Mr. Hoeber guilty. Accordingly, the verdict directors failed to ensure a unanimous jury verdict.

**Trial Counsel Was Ineffective for Failing to Object to the Verdict Directors**

This Court must now determine whether trial counsel's failure to object to the erroneous verdict directors constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 286-87 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

To satisfy the performance prong, movants "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). This presumption is overcome when a movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted).

11

To establish *Strickland* prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." *Dorsey*, 448 S.W.3d at 287. "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation omitted).

The motion court concluded that trial counsel's failure to object to the verdict directors did not prejudice Mr. Hoeber. In doing so, the motion court reasoned that, in *Celis-Garcia*, the risk that the verdict directors misdirected the jury occurred because the state emphasized multiple uncharged bad acts. The motion court found that there was no risk that the jurors were misled about which incident of abuse applied to a particular count in Mr. Hoeber's case because S.M. testified about two particular incidents[5] and any uncharged acts committed by Mr. Hoeber were not the emphasis or focus of the state's case.

As previously explained, however, the state presented conflicting evidence at trial that S.M. had disclosed incidents of hand-to-genital contact occurring in the kitchen, the bedroom, the living room, and the bathroom. In its closing argument, the state addressed S.M's conflicting statements:

> When you're talking to a child, when you ask them a question, they're going to answer whatever memory that jogs. And if something happens to them multiple times, one time they might remember the kitchen. The next time they might remember the bedroom. The next time they might remember the living room.

---

[5] In its findings and conclusions, the motion court incorrectly states that S.M. "testified as to two particular incidents: one in the bedroom and one in the kitchen." S.M. testified at trial that Mr. Hoeber had touched her more than one time in the kitchen. When questioned about other rooms in which the abuse occurred, S.M. testified that no abuse occurred in the bathroom, the living room, or the bedroom.

12

> They're going to spit out whatever what you said to them makes them think about. And that's what's happened to this child. And this happened more than one time. Even the defendant said it happened twice. [S.M.] said it happened more than one time and a lot.

As reflected by this closing argument, the state's case was not limited to or focused on any two particular incidents of abuse. Instead, the state argued that multiple acts of abuse had occurred in justifying S.M.'s conflicting statements. In fact, the state concluded its closing argument by stating: "[Mr. Hoeber] touched [S.M.] on *at least* two occasions in 2007 between July 1st and the end of August . . . ." (Emphasis added). Given the evidence of multiple acts of abuse introduced at trial and the state's emphasis on such evidence in its closing argument, the non-specific verdict directors created a real risk that the jurors did not unanimously agree as to the acts for which they were finding Mr. Hoeber guilty. Therefore, a reasonable probability exists in this case that the verdict directors misled or misdirected the jury in such a way that undermines this Court's confidence in the verdicts.

The state asserts that, even though multiple acts of statutory sodomy were introduced into evidence, no prejudice resulted from trial counsel's failure to object to the non-specific verdict directors because Mr. Hoeber employed a "unitary defense" at trial. In support of its argument, the state relies on *State v. LeSieur*, 361 S.W.3d 458 (Mo. App. 2012), for the proposition that the type of defense a defendant employs determines whether a risk exists that the jurors did not unanimously agree on the act they found the defendant guilty of committing.

13

In *LeSieur*, the defendant was convicted of two counts of second-degree statutory rape. *Id.* at 460. On appeal, the defendant argued that the trial court violated his constitutional right to a unanimous jury verdict because the verdict directors failed to require the jury to agree on the specific act he committed to find him guilty on each rape count. *Id.* The court of appeals found that the trial court erred in failing to properly instruct the jury because the victim testified to multiple acts of statutory rape but the verdict directors did not include any distinguishing characteristics. *Id.* at 463. Nevertheless, the court concluded that the erroneous verdict directors did not result in plain error. *Id.* at 465. The court reasoned:

> *Celis-Garcia* makes clear that, to establish manifest injustice based on an insufficiently specific verdict director in a multiple acts case, the defendant must have mounted an incident-specific defense, which would have given the jury a basis to distinguish among the various incidents mentioned in the evidence. *Celis-Garcia* suggests that, where the defendant instead mounts a unitary defense to all alleged actions, attacking the victim's credibility generally, manifest injustice does not exist.

*Id.* (internal quotation omitted). Since *LeSieur*, multiple cases have, likewise, held that the failure to mount an incident-specific defense precludes a finding that non-specific verdict directors resulted in manifest injustice. *See State v. King*, 453 S.W.3d 363, 376-77 (Mo. App. 2015); *State v. Payne*, 414 S.W.3d 52, 56-57 (Mo. App. 2013); *State v. Rose*, 421 S.W.3d 522, 529 (Mo. App. 2013).

At no point in *Celis-Garcia*, however, did this Court conclude that a defendant asserting a general defense could never be prejudiced by non-specific verdict directors. Instead, this Court found that the fact that the defendant in *Celis-Garcia* "relied on evidentiary inconsistencies and factual improbabilities respecting each allegation of

14

hand-to-genital contact makes it *more likely* that individual jurors convicted her on the basis of different acts." *Celis-Garcia*, 344 S.W.3d at 159 (emphasis added). In other words, while the act-specific defense in *Celis-Garcia* helped this Court find that the insufficiently specific verdict directors were prejudicial to the defendant, the Court was not required to find prejudice based on her defense. This Court's analysis and holding in *Celis-Garcia* was not that a defendant like Mr. Hoeber could not suffer prejudice from insufficiently specific verdict directors just because he employed a general or unitary defense. To the extent *LeSieur* and its progeny suggest otherwise, they should no longer be followed.

Rather, as previously explained, to establish prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." *Dorsey*, 448 S.W.3d at 287. Moreover, in reviewing a post-conviction relief case, "the appropriate standard of prejudice should be somewhat lower" than that needed to establish plain error. *Deck v. State*, 68 S.W.3d 418, 427-28 (Mo. banc 2002) (internal quotation omitted). The ultimate determination in a post-conviction relief case is "whether defendant has suffered a genuine deprivation of his right to effective assistance of counsel, such that this Court's confidence in the fairness of the proceeding is undermined." *Id.* at 428.

Trial counsel's failure to object to the insufficiently specific verdict directors submitted to the jury undermines this Court's confidence in the reliability of the verdicts. At trial, the jury heard conflicting statements about multiple incidents of hand-to-genital contact. The state's case was not focused on or limited to any specific acts or incidents of

15

sexual abuse. Rather, the state argued that Mr. Hoeber had abused S.M. multiple times and at least on two occasions. Because there was evidence of multiple, separate incidents of statutory sodomy, any of which would have supported the charged offenses, and neither verdict director specified a particular act or incident, there was no requirement that jurors agree on the same act to find Mr. Hoeber guilty on either count of statutory sodomy. The verdict directors, therefore, created a real risk that the jury verdicts were not unanimous. Despite this substantial threat to the unanimity of the jury verdicts, Mr. Hoeber's trial counsel failed to object to the insufficiently specific verdict directors. Accordingly, trial counsel's failure to object to the erroneous verdict directors prejudiced Mr. Hoeber.

Because the motion court concluded that Mr. Hoeber was not prejudiced by trial counsel's failure to object, it did not determine whether trial counsel's performance fell outside the range of professional, competent assistance. Mr. Hoeber argues that trial counsel's failure to object was unreasonable in that, at the time of trial, the notes on use to MAI-CR3d 304.02 warned of the need to modify verdict directors to avoid the risk of a non-unanimous jury verdict in a multiple acts case. The notes on use provided that the "place of the offense may become of 'decisive importance' . . . where the defendant may have committed several separate offenses against the same victim at the same general location within a short space of time." MAI-CR3d 304.02, Notes on Use 6. "In such a situation, upon request of the defendant or on the Court's own motion, the place should be more definitely identified, such as 'the front bedroom on the second floor,' 'the southeast corner of the basement,' etc." *Id.*

16

In *Celis-Garcia*, this Court determined that the modification suggested by the notes on use was "insufficient to protect a defendant's constitutional right to a unanimous jury verdict in a multiple acts case." 344 S.W.3d at 158. In doing so, this Court found that the modification should have been mandatory in multiple acts cases and that the separate offenses could be distinguished on the basis of time or other characteristics besides the place in which the offense occurred. *Id.* Nevertheless, at the time of Mr. Hoeber's trial, the notes on use contained an express warning that, in cases in which the defendant has committed multiple separate acts, distinguishing between the offenses is of crucial importance and that the verdict directors should be modified accordingly. Given this express warning, a reasonably competent attorney would have objected to, or requested the modification of, the verdict directors to protect a defendant's right to a unanimous jury verdict in a multiple acts case.

The state acknowledges that the notes on use at the time of trial addressed modification of verdict directors in multiple acts cases. Nevertheless, it asserts that the prevailing professional norms at the time of Mr. Hoeber's trial did not require trial counsel to object because *Celis-Garcia* had not yet been decided. The state contends that trial counsel should not be found incompetent for failing to predict the change in the law that resulted from this Court's opinion in *Celis-Garcia*.

In evaluating trial counsel's performance, "counsel's conduct is measured by what the law is at the time of trial." *Zink v. State*, 278 S.W.3d 170, 190 (Mo. banc 2009). It follows that trial counsel typically will "not be held ineffective for failing to anticipate a

17

change in the law." *Id.* (internal quotation omitted). This Court's opinion in *Celis-Garcia*, however, did not constitute a substantive change in the law.

As explained in *Barmettler v. State*, 399 S.W.3d 523, 529 (Mo. App. 2013), "*Celis-Garcia* did not establish the right of criminal defendants to a unanimous jury verdict, and was not the first judicial decision to recognize that imprecisely drafted verdict directors could violate this constitutional right." At the time of Mr. Hoeber's trial, it was well-established law in the Missouri that "the verdict must be definite and certain as to the crime of which the accused is found guilty."[6] *State v. Washington*, 146 S.W. 1164, 1166 (Mo. 1912); *see also State v. Jackson*, 146 S.W. 1166, 1169 (Mo. 1912); *State v. Pruitt*, 100 S.W. 431, 432 (Mo. 1907); *State v. Mitchell*, 704 S.W.2d 280, 287 (Mo. App. 1986); *State v. Pope*, 733 S.W.2d 811, 813 (Mo. App. 1987). This Court's opinion in *Celis-Garcia* merely reiterated this principle in the context of a statutory sodomy case. *Celis-Garcia*, therefore, did not constitute a substantive change in the law and cannot excuse trial counsel's failure to object to the verdict directors.

The state further claims that trial counsel's performance cannot be deemed incompetent because trial counsel's failure to object could be viewed as reasonable trial

---

[6] In its brief, the state relies on several cases for the proposition that, at the time of Mr. Hoeber's trial, the prevailing norms did not require him to object to the verdict directors. The cases relied on by the state, however, did not approvingly uphold the use of non-specific verdict directors; rather, the courts found that, under the circumstances of each case, the insufficiently specific verdict directors did not prejudice the defendant. *See State v. Smith*, 32 S.W.3d 134, 136 (Mo. App. 2000); *State v. Staples*, 908 S.W.2d 189, 190-91 (Mo. App. 1995); *State v. Burch*, 740 S.W.2d 293, 295-96 (Mo. App. 1987) *abrogation recognized by Mallow*, 439 S.W.3d at 771 n.5. Simply because these courts found no prejudice resulted from the non-specific verdict directors does not mean that insufficiently specific verdict directors were an acceptable practice at the time of Mr. Hoeber's trial.

18

strategy under the circumstances of Mr. Hoeber's case. In particular, the state relies on the fact that Mr. Hoeber's defense at trial was that he did not commit any acts of statutory sodomy; thus, trial counsel would have had no reason to focus the jury's attention on the multiple acts evidenced at trial by including specific references to those acts in alternative verdict directors. The state asserts that, had trial counsel objected, it would have resulted in eight possible alternative verdict directors, making it more likely that Mr. Hoeber would have been convicted.[7]

There is "a presumption that counsel's alleged omissions were sound trial strategy." *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) (internal quotation omitted). At the evidentiary hearing, however, trial counsel testified that he did not fail to object to the verdict directors on the basis of trial strategy.[8] Moreover, the state's trial strategy argument is premised on the assumption that modifying the verdict directors would have made it more likely that Mr. Hoeber was convicted. This argument is contrary to the purpose of requiring juror unanimity in multiple acts cases.

Again, the lack of specificity in the verdict directors made it possible for each individual juror to determine which incident he or she would consider in finding Mr. Hoeber guilty on each count of statutory sodomy. Therefore, one juror could have found Mr. Hoeber guilty of an act that occurred in the kitchen, while another juror could

---

[7] Although the state argues that any objection by trial counsel would have resulted in multiple alternative verdict directors, the state also could have elected to submit one specific incident or act of statutory sodomy for each count.

[8] The motion court made no credibility findings regarding trial counsel's testimony at the evidentiary hearing that he had no trial strategy in failing to object to the verdict directors.

19

have found him guilty of an act that occurred in the bathroom. The verdict directors allowed the jury to convict Mr. Hoeber of two counts of statutory sodomy without requiring all 12 jurors to agree on the specific conduct that constituted each offense. Because the jurors did not have to agree on which of S.M.'s conflicting disclosures of abuse constituted each offense, the insufficiently specific verdict directors made it easier for the jury to convict Mr. Hoeber of two counts of statutory sodomy. It follows that no reasonable trial strategy existed for failing to object to the non-specific verdict directors.

In the absence of reasonable trial strategy, trial counsel's failure to object to the insufficiently specific verdict directors did not conform to the degree of skill, care, and diligence of a reasonably competent attorney. Mr. Hoeber, therefore, has shown that, under the circumstances of this case, trial counsel's performance fell outside the wide range of professional, competent assistance.

Accordingly, Mr. Hoeber has established that, by failing to object to the insufficiently specific verdict directors, trial counsel's performance was deficient and Mr. Hoeber was thereby prejudiced. Trial counsel provided ineffective assistance when he failed to object to the erroneous verdict directors, and the motion court clearly erred in overruling Mr. Hoeber's motion for post-conviction relief.

## Conclusion

Mr. Hoeber was denied effective assistance of counsel when his trial counsel failed to object to the use of non-specific verdict directors in a multiple acts case.

Consequently, the motion court clearly erred in overruling Mr. Hoeber's motion for post-conviction relief. The motion court's judgment is reversed, and the cause is remanded.[9]

_____
PATRICIA BRECKENRIDGE, CHIEF JUSTICE

Stith, Draper, Teitelman and
Russell, JJ., concur; Fischer, J.
dissents in separate opinion filed;
Wilson, J., concurs in opinion of
Fischer, J.

---

[9] In his second point, Mr. Hoeber asserts that the motion court clearly erred in overruling his motion for post-conviction relief because trial counsel provided ineffective assistance at his sentencing hearing by failing to present mitigating evidence from a mental health expert. Because Mr. Hoeber's first point is dispositive of this appeal, this Court need not decide Mr. Hoeber's second point.



EDWARD L. HOEBER,                            )
                                             )
                    Appellant,               )
                                             )
v.                                           )        No. SC95079
                                             )
STATE OF MISSOURI,                           )
                                             )
                    Respondent.              )

## DISSENTING OPINION

I respectfully dissent.  The principal opinion, in holding that the motion court was clearly erroneous in concluding that trial counsel was not ineffective for failing to object to the non-specific verdict directors, fails to give due consideration to the circumstances then before the defense and fails to apply a presumption of reasonableness to counsel's conduct.  Because the defense's overall trial strategy was furthered by the non-specific verdict directors, and because the risk of non-unanimous verdicts was low from the defense's perspective, trial counsel's failure to object to the non-specific verdict directors was a reasonable trial strategy.[1]

---

[1]  As recognized by the principal opinion, even though the motion court expressly addressed only the prejudice prong of the ineffective assistance of counsel claim, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."  Rule 73.01(c); *see also Johnson v. State*, 388 S.W.3d 159, 168 (Mo. banc 2012) (applying Rule 78.07(c) to a Rule 29.15 motion, requiring movant to raise the omission of required findings in a motion to amend the judgment).

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test in order to prove his or her claims." *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013). Under the first prong of the *Strickland* test, the movant must show "his or her counsel failed to exercise the level of skill and diligence **that a reasonably competent counsel would in a similar situation**." *Id.* at 898–99 (emphasis added). That is, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct **on the facts of the particular case, viewed as of the time of counsel's conduct**." *Strickland v. Washington*, 466 U.S. 668, 690 (1984) (emphasis added). As further explained by the United States Supreme Court:

> **Judicial scrutiny of counsel's performance must be highly deferential.** It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, **the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case.** Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations omitted) (emphasis added). Accordingly, it is the rare case that a reviewing court should find the presumption of reasonableness has been overcome. This is not one of those cases.

2

Here, there were two categories of evidence against Hoeber: (1) S.M's statements, which consisted of her testimony at trial, a video interview with police, and out-of-court statements purportedly made to her mother and a child therapist, and (2) Hoeber's confession to police. Not surprisingly, S.M., who was only four years old at the time of the out-of-court statements and only six years old at the time of trial, gave statements that were contradictory as to the room in which the inappropriate touching took place,[2] that failed to provide a logical timeframe as to when the touching took place, that failed to establish on how many occasions the touching took place, and that were even contradictory as to whether Hoeber touched her. In contrast, Hoeber's confession to police, the very words of the adult defendant, was quite clear in detail. Hoeber admitted to touching S.M. inappropriately on two occasions, he identified the room where the touching took place (the bathroom), and he identified the general timeframe (about a month before he was arrested in August 2007).

Given the nature of this evidence, Hoeber's confession was undoubtedly the State's strongest evidence and the primary basis for charging Hoeber with *two* counts of first-degree statutory sodomy. And, given this dichotomy of the evidence, Hoeber's counsel employed a reasonable strategy at trial. While counsel did perhaps the best he could with Hoeber's confession (attempting to show it was coerced by police), he of course wanted the jury's primary focus to be on the weaker evidence, S.M.'s statements, which were ripe

---

[2] At trial, S.M. testified that the touching occurred only in the kitchen, and not in the bedroom, living room, or bathroom. In out-of-court statements made to her mother, S.M. said the touching occurred in the kitchen and bedroom. In out-of-court statements made to a child therapist, S.M. identified, at varying times, the kitchen, bedroom, living room, and bathroom as rooms where the touching occurred.

to be picked apart based on credibility concerns. The infirmities in S.M.'s statements were the best vehicle to sow reasonable doubt in the minds of the jurors. That is, if the jury focused on this weaker evidence, there was not only a possibility that the jury would disbelieve S.M.'s testimony and purported out-of-court statements but also a possibility that—because this evidence did not add up—the jury would consequently conclude there was reasonable doubt regarding the veracity of Hoeber's confession. That this was clearly counsel's overall trial strategy, as reflected in the trial transcript, was further confirmed by trial counsel's testimony at Hoeber's postconviction hearing.

Because counsel wanted the jury to focus on S.M.'s statements, it was perfectly reasonable and consistent with the overall trial strategy not to insist that the verdict directors specify a room where the touching took place.[3] As discussed, Hoeber's confession identified only one room, the bathroom. With S.M.'s statements, the bathroom was referenced only once, and that was through the testimony of the child therapist. It was the other rooms, particularly the kitchen and bedroom, that were at the center of S.M.'s statements. The kitchen was identified in S.M.'s testimony, the mother's testimony, and the child therapist's testimony, while the bedroom was identified in S.M.'s

---

[3] It is immaterial that, at Hoeber's postconviction hearing, counsel testified that his failure to object to the verdict directors was not based on trial strategy. Criminal defendants are guaranteed *objectively* effective assistance of counsel, not *subjectively* effective assistance of counsel; the question is whether counsel's conduct was *objectively* reasonable, not whether counsel *subjectively* believed his conduct was reasonable. *See, e.g., Strickland*, 466 U.S. at 688; *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984). Additionally, despite an ethical obligation to testify truthfully to the motion court, *see* Rule 4-3.3(a)(1), a defendant's trial counsel occasionally provides testimony that facilitates a finding that he or she provided ineffective assistance of counsel. This Court has previously directed the Office of Chief Disciplinary Counsel to investigate counsel's competency when there is a published opinion finding ineffective assistance of counsel.

video interview with police, the mother's testimony, and the child therapist's testimony. Consequently, the identity of the room was tied up with the category of evidence. The bathroom was associated with Hoeber's confession; the other rooms were associated with S.M.'s statements. Without specifying a room, the verdict directors did not focus the jury's attention on an associated category of evidence either way, i.e., the verdict directors did not prompt the jury toward either Hoeber's confession or S.M.'s statements. The non-specific verdict directors, therefore, left open the possibility that jury deliberations would center around S.M.'s statements, exactly what the defense wanted.

However, this possibility would have been effectively foreclosed by specific verdict directors. If counsel had insisted on specifying a room in the verdict directors, there were two scenarios: (1) as the principal opinion points out, the State could have elected to specify one room for each of the verdict directors, or (2) as the State argues, there could have been eight possible alternative verdict directors—four for each count, with a different verdict director for each possible room (bathroom, kitchen, bedroom, and living room). Of course, under the first scenario, the State would have elected to specify the bathroom in the verdict directors, because the backbone of the State's evidence, Hoeber's confession, identified that Hoeber touched S.M. twice (once for each count), specifically in the bathroom, and specifically within the timeframe given in the verdict directors, between July 1, 2007, and August 29, 2007. Choosing to specify any room over the bathroom would have been illogical for the State, as the State then would have been relying on its weaker evidence. Under the first scenario, the jury's focus would have

5

certainly been shifted to Hoeber's confession—exactly what reasonable defense counsel would not have wanted under the circumstances.

The second scenario would not have been any better for Hoeber. The principal opinion dismisses the argument that having four alternative verdict directors for each count would have necessarily been bad for the defense because it would have reminded the jury of just how many bad acts were alleged. While that would have been a reasonable consideration for the defense, it is not the only one. With alternative verdict directors, there would have been one verdict director for each count that specified the bathroom and necessarily focused the jury's attention on Hoeber's confession. Moreover, acting reasonably and relying on its strongest evidence, the State would have insisted that the verdict director specifying the bathroom be the first verdict director for each count, prompting the jury to Hoeber's confession right out of the gate. Again, this is exactly what reasonable defense counsel would not have wanted under the circumstances.

Although specific verdict directors, under both scenarios, would have better ensured unanimous verdicts, this would have come at the price of undermining the defense's overall trial strategy by unduly shifting the jury's focus to the State's strongest evidence—Hoeber's confession. Moreover, evaluated "from counsel's perspective at the time" and "considering all the circumstances," *see Strickland*, 466 U.S. at 688–89, any risk of non-unanimous verdicts likely, and reasonably, appeared remote to the defense. Such a conclusion flows from the dichotomy of the evidence—the defendant's own detailed confession versus the contradictory, and at times nonsensical, statements of a very young child. Assuming a conviction by reasonable jurors, if a particular juror did

6

not believe S.M.'s statements, his or her guilty vote would have been based solely on Hoeber's confession. But the opposite does not follow. If a different juror did believe S.M.'s statements, it seems rather unlikely that his or her guilty vote would have been based solely on S.M.'s statements—that is, if the juror believed S.M.'s statements, he or she would have little reason to doubt the veracity of Hoeber's confession. Accordingly, it was reasonable under the circumstances to conclude that if Hoeber were to be convicted, it was almost certainly going to be because all jurors believed Hoeber's confession.[4] In this way, it was objectively reasonable for counsel to act in furtherance of the defense's overall trial strategy, rather than act out of concern for possible non-unanimous verdicts.

Therefore, contrary to the principal opinion's assumption, it does not follow "that no reasonable trial strategy existed for failing to object to the non-specific verdict directors." Any importance placed on unanimous verdicts in general is not dispositive of whether counsel provided reasonably effective assistance in this particular case, under these particular circumstances. *See, e.g., Love*, 670 S.W.2d at 503 (rejecting the argument that counsel was ineffective for failing to raise the omission of an instruction in a motion for a new trial simply because the "instruction was required by the then applicable law" and, instead, concluding "that a reasonable attorney could have decided [the] instruction would have been detrimental to his client"). The principal opinion fails

---

[4] Given these circumstances, it is also understandable that the motion court chose to skip to the second prong of the *Strickland* test and specifically address prejudice. *See Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012) ("The court may not need to address both prongs if the movant has failed to make a sufficient showing on one. If the ineffectiveness claim can be disposed of because of lack of sufficient prejudice, that course should be followed.") (internal citation omitted).

7

to adhere to basic tenets of ineffectiveness analysis, that there is a presumption of reasonableness and that "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. Although one way to provide effective assistance in this case may have been to eliminate any risk of non-unanimous verdicts, another—and in my view better—way to provide effective assistance under the circumstances was to *not* insist on specific verdict directors, so as to not focus jury deliberations on Hoeber's own damning confession. While the principal opinion may endorse a strategy that puts the protection of unanimous verdicts first and foremost, it unduly narrows consideration of the likely original trial outcome and outcome on remand.

It is also worth noting that the principal opinion's shoehorning of *Celis-Garcia*'s principles into the postconviction relief context opens the door even further for prisoners to make matters considerably worse for themselves in the pursuit of postconviction relief, a result entirely foreseeable based on the ultimate resolution of *Celis-Garcia* itself. *See State v. Ess*, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part and dissenting in part) ("[I]t will never be known whether the decision not to object to the state's instructions in *Celis-Garcia* was a matter of trial strategy even though the subsequent history of that case shows such a strategy would not have been unreasonable."). In *State v. Celis-Garcia*, a direct appeal case, this Court reversed and remanded for a new trial on plain error review after the State broadly charged the defendant with only two counts of first-degree statutory sodomy but presented evidence of numerous acts that could have served as the basis for each criminal charge. 344

S.W.3d 150, 154–56 (Mo. banc 2011). The defendant was originally convicted of both counts of first-degree statutory sodomy and sentenced to two concurrent 25-year sentences. *Id.* at 154. On remand, however, the State added new charges to match the numerous acts that had been alleged at trial but not specifically instructed on, and the defendant was subsequently convicted of 10 counts of first-degree statutory sodomy (each carrying a life sentence), six counts of first-degree child molestation (each carrying a 15-year sentence), and one count of first-degree statutory rape (also carrying a life sentence). *State v. Celis-Garcia*, 420 S.W.3d 723, 725 (Mo. App. 2014). These convictions, after taking into account the concurrent or consecutive nature of the individual sentences, resulted in three consecutive life sentences plus 30 years. *Id.* Likewise, the State here is not precluded from adding charges after remand. Under the principal opinion's analysis and result, the State is incentivized to amend the charges on remand to include all versions of facts contained in the record, which trial counsel undoubtedly knew, and knows, is not in Hoeber's best interest.

These repercussions aside, this Court should not merely acknowledge the Supreme Court's directives in ineffectiveness analysis but actually follow them and find counsel to have been effective in all but the rarest of cases. A reviewing court's mere disagreement with counsel's trial strategy does not render counsel's assistance ineffective; not only is there a presumption of reasonableness, but due deference and due consideration of the circumstances of the case also should be given, and a wide latitude of what constitutes "reasonable" should be applied. In my view, after reviewing the trial transcript and motion hearing transcript, Hoeber has not overcome the presumption that trial counsel

acted reasonably because counsel's conduct "falls within the **wide range** of reasonable professional assistance; that is . . . the challenged action '**might be** considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (emphasis added). I, therefore, dissent, and I would not subject Hoeber to the risk of additional charges.

_____
Zel M. Fischer, Judge