

# Missouri Court of Appeals
## Southern District

In Division

STATE OF MISSOURI,    )
                      )
    Respondent,    )    No. SD38096
                      )
v.                    )    **Filed: August 6, 2024**
                      )
CHRISTOPHER A. CREVISTON,    )
                      )
    Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Kevin L. Selby, Judge

## AFFIRMED

Christopher A. Creviston appeals his convictions following a jury trial of one count of statutory sodomy in the first degree and one count of child molestation in the third degree. Finding no merit to his three points relied on, we affirm the judgment of the trial court.

## Facts and Procedural History

Creviston was charged with three counts of statutory sodomy in the first degree, one count of statutory sodomy in the second degree, and two counts of child molestation in the third degree. These charges reflected allegations Creviston sexually abused his daughter's friends ("Victim 1" and "Victim 2") on numerous occasions in 2018 and 2019.

During the jury trial, Creviston testified in his own defense and denied the accusations against him. The jury found Creviston guilty of one count of statutory

sodomy in the first degree, and one count of child molestation in the third degree, and acquitted Creviston on the other four counts. The jury recommended a sentence of 25 years imprisonment for the statutory sodomy count and ten years for the child molestation count. The trial court sentenced Creviston in accord with the jury's recommendations, with the terms to run concurrently. This appeal followed.

Creviston challenges his convictions in three points relied on:

(1) The trial court plainly erred, in violation of [Creviston's] rights to due process and to a fair trial, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, when it failed to issue a curative instruction or order a mistrial during the State's closing argument when the State discussed evidence that was outside the record and his experience as a prosecutor. References to facts outside the record and the experiences of the prosecutor prosecuting other similar cases was an evident, obvious, and clear error, and the prosecutor's argument resulted in manifest injustice because this was not a case of overwhelming evidence and the prosecutor's argument is likely what lead to the jury's questionable findings.

(2) The trial court plainly erred, in violation of [Creviston's] rights to due process and to a fair trial, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, when it failed to issue a curative instruction or order a mistrial during voir dire when the State disclosed the defense requested a change of venue and that is why the trial was occurring in McDonald County. Referencing this fact was an evident, obvious, and clear error, and the prosecutor's argument resulted in manifest injustice because this comment served no purpose but to gain an unfair strategic advantage, this was not a case of overwhelming evidence, and the prosecutor's comment contributed to the jury's questionable findings.

(3) The trial court plainly erred in submitting Instruction Number 10 to the jury, because that verdict director failed to specify a particular incident or instruct the jurors that they must unanimously agree on the same incident, and thereby violated [Creviston's] rights to due process, a fair trial, and a unanimous verdict, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10, 18(a), and 22(a) of the Missouri Constitution, in that the State presented evidence of multiple acts of mouth to genital contact between [Victim 1] and [Creviston], yet Instruction Number 10 did not specify any one of these incidents, thereby making it unclear as to which incident [Creviston] was found guilty and allowing the possibility that the jurors failed to unanimously find the same incident. A manifest injustice resulted from the error because there was not overwhelming evidence of either incident,

2

[Creviston] had an incident specific defense, and the State referenced both incidents in closing thereby exacerbating the likelihood jurors did not unanimously agree on which incident occurred.

## Standard of Review

This Court does not generally review unpreserved claims of error. ***State v. Brandolese***, 601 S.W.3d 519, 526 (Mo. banc 2020). Rule 30.20 provides an exception allowing that "plain errors affecting substantial rights may be considered in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." ***Brandolese***, 601 S.W.3d at 526 (quoting Rule 30.20).[1] Rule 30.20 makes clear plain error review is a discretionary, two-step process. *See* ***State v. Minor***, 648 S.W.3d 721, 731 (Mo. banc 2022). The first step is to determine whether the claim of error facially establishes substantial grounds for believing that a manifest injustice or a miscarriage of justice has resulted. ***Brandolese***, 601 S.W.3d at 526. Plain errors are those that are evident, obvious, and clear. ***Id.*** at 531. In the absence of such a determination, an appellate court should decline to review for plain error. *See* ***id.*** at 526. If plain error is found on the face of the claim, the Court may proceed to the second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice. *See* ***State v. Baumruk***, 280 S.W.3d 600, 607 (Mo. banc 2009). To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show that the error was outcome determinative. ***State v. Wood***, 580 S.W.3d 566, 579 (Mo. banc 2019).

## Point I: State's Closing Argument

In his first point, Creviston argues the trial court plainly erred in failing to "issue a curative instruction or order a mistrial during the State's closing argument when the

---

[1] All rule references are to Missouri Court Rules (2023).

3

State discussed evidence that was outside the record and his experience as a prosecutor." Creviston suggests this resulted in a manifest injustice because "this was not a case of overwhelming evidence and the prosecutor's argument is likely what led to the jury's questionable findings."

In closing argument, the prosecutor stated:

> The second point that every defense witness testified to was that they don't think [Creviston] would do this. Well, the sad fact of the world we live in today is that child molesters commonly are squeaky clean people. [Creviston] doesn't have anything but traffic tickets. You know, he's a great guy by all counts, no criminal history. Unfortunately, in my job that I see that a lot of times, perpetrators seek out victims because they know that these are victims who have trouble in their own lives, these are victims who are not going to be believed and they take advantage of their position of power. You heard [Creviston] today talk about how he had this great relationship with them, they had terrible relationships with their real father. He was a figure, an authority figure, in their lives and he took advantage of that.

Defense counsel did not object.

Defense counsel made the following statements during closing argument:

> [The State] talks about child molesters and how they seek out kids and he talked about in his experience. I've done this for quite some time. Child molesters don't seek out kids and touch them in front of other kids, it doesn't happen. They get kids alone when nobody else is around and nobody can testify, so it's just a he said, she said. They don't have witnesses, they don't do it in front of their daughter, they do it in front of somebody else. That's not their M-O. [Creviston's daughter] said she was there, it never happened.

Defense counsel responded to the prosecutor's now challenged statement, and—without objecting—countered with defense counsel's own statement as to the same substance. This is fatal to Creviston's instant argument because a "party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to." **State v. Barnes**, 583 S.W.3d 458, 462 (Mo. App. S.D. 2019) (internal quotations and citation omitted). "[T]his Court will not use plain error to impose a *sua sponte* duty on the trial court to correct a defendant's invited

4

errors." ***State v. Mills***, 687 S.W.3d 668, 677 (Mo. banc 2024) (internal quotations and citation omitted).

Creviston's point I argument is waived, and his request for plain error review is accordingly denied.

## Point II: Voir Dire[2]

In his second point, Creviston argues the trial court plainly erred in failing to "issue a curative instruction or order a mistrial during voir dire when the State disclosed the defense requested a change of venue and that is why the trial was occurring in McDonald County." Creviston suggests the comment "served no purpose but to gain an unfair strategic advantage, this was not a case of overwhelming evidence, and the prosecutor's comment contributed to the jury's questionable findings."

On August 31, 2022, in the Circuit Court of Newton County, the court heard Creviston's motion for change of venue. Defense counsel explained Creviston had other charges, and so Creviston wanted a change of venue to McDonald County where they would then do a motion to consolidate. At the beginning of voir dire, the prosecutor introduced himself and said he was an attorney in Neosho. The prosecutor then said, "This case has been moved to McDonald County for a change of venue." Defense counsel did not object. The second prosecuting attorney introduced himself and said he worked with the lead prosecutor in Newton County. He then said, "As [the lead prosecutor]

---

[2] Creviston's point II argument states: "Like [p]oint I, which [Creviston] incorporates by reference here. . . ." "Incorporation by reference from one part of an appellate brief to another is prohibited." ***In re Marriage of Wasson***, 644 S.W.3d 338, 350 n.10 (Mo. App. S.D. 2022). This particular instance does not strike us as an intentional violation, and is not—in and of itself—dispositive of Creviston's appeal. We therefore simply remind Creviston's counsel of the rule. *See* ***In re Marriage of Blanchard***, 613 S.W.3d 879, 887 n.10 (Mo. App. S.D. 2020).

mentioned, we're here in Mac County because of the change of venue requested by [Creviston]."  Again, defense counsel did not object.

Here, Creviston provides no authority to suggest that it was error (much less plain error) for the trial court to allow a party to mention the fact that venue was changed in a case.  Creviston does not account for the lack of such authority, and we will not act as his advocate by independently searching for authority to support his claim. ***Campbell v. Woodland Lakes Trusteeship, Inc.***, 591 S.W.3d 511, 513 (Mo. App. E.D. 2019).  Moreover, Creviston wholly fails to demonstrate that merely mentioning a change of venue created a manifest injustice or was outcome determinative.

For all of these reasons, Creviston's point II is denied.

## Point III:  Instruction 10

In point III, Creviston argues the trial court plainly erred in submitting Instruction 10 to the jury because "that verdict director failed to specify a particular incident or instruct the jurors that they must unanimously agree on the same incident[.]"  Creviston suggests there was evidence of multiple acts of mouth to genital contact between Victim 1 and Creviston, and that it was possible the jurors "failed to unanimously find the same incident."  Finally, Creviston argues he "had an incident specific defense, and the State referenced both incidents in closing [argument] thereby exacerbating the likelihood jurors did not unanimously agree on which incident occurred."

Creviston was charged (as relevant here) with child molestation in the third degree, based on the following:

> [Creviston] for the purpose of arousing or gratifying the sexual desire of [Creviston] subjected [Victim 1] who was then  less than fourteen years of age to sexual contact by putting his mouth on [Victim 1's] vagina on the outside of [Victim 1's] clothing.

No other charge involved mouth to genital contact.

6

Creviston argues the trial court plainly erred in submitting Instruction 10, because there was evidence of multiple distinct acts where Creviston touched Victim 1's genitals with his mouth. In support, Creviston points to Victim 1's testimony at trial. During the State's direct examination, Victim 1 testified that at some point during the fall of 2018, she was sitting on the couch in Creviston's home. She was wearing pajama pants and a t-shirt, and Creviston "made [Victim 1] sit on his face."

The following colloquy then occurred:

Q. Okay. In the fall of that year, was there ever a time he would. . . touch your vagina with his mouth?

A. Just that one time on the couch.

Q. Okay. Will you tell me about that again?

A. I think we were wrestling, I don't remember.

Q. Oh, that was the time when you said he had you sit on him?

A. Yeah.

Q. Oh. Okay. And when did you think that happened?

A. The fall of 2018. . . I was wearing pajama pants.

. . . .

Q. Okay. Did [Creviston] touch you inappropriately other times, other than the times we've discussed here in Newton County?

A. Other than that time in the pool, none that I can think of.

During cross-examination, defense counsel asked Victim 1 about her deposition testimony regarding when Creviston touched her genitals with his mouth:

Q. Okay. Where he had touched—where you said that he touched his mouth to your vagina over your clothes, is that right?

A. Yes.

Q. Okay. And do you remember telling me that he had you lay down on the couch?

7

A.     Yes.

Q.     And that he put his head in between your legs?

A.     Yes.

Q.     And that's what you told me during your deposition.

A.     Yes.

Q.     But here you're saying you straddled his face or sat on his face?

A.     Both those things happened.

Q.     Okay.  The same time, the same date?

A.     Yes.  I was laying down before I sat on his face.

Q.     Okay.

A.     Did I not say that in the deposition too?

Q.     No.

A.     Oh.

Q.     Okay.  So when the prosecutor asked you what happened and you just testified that he made you sit on his face and you said that's what happened, now you're adding to it?

Instruction 10, the verdict director for the trial court at issue in this point, read as

follows:

As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or between October 1, 2018 and December 31, 2018, in the State of Missouri, [Creviston] touched the vagina of [Victim 1] through the clothing by putting [Creviston's] mount on [Victim 1]'s vagina, and

Second, that [Creviston] did so for the purpose of arousing or gratifying [Creviston's] sexual desire, and

Third, that [Victim 1] was a child less than fourteen years of age, then you will find [Creviston] guilty under Count V of child molestation in the third degree.

8

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Creviston] not guilty of that offense.

Defense counsel made no objection to this instruction.

As relevant here, the State made the following statements during closing argument:

Instruction No. 10 is Count V. It is, the allegation is, that between October 1st of 2018 and December 31st of 2018, that [Creviston] touched [Victim 1's] vagina through her clothing by putting his mouth on her vagina. Again, that was her testimony that she was sitting, or they were on the living room big couch and that he had put his head between her legs and that also she had straddled his face. Clearly she was thirteen years old at the time, so again the State has proven its burden for Count V.

As to Instruction 10, defense counsel's closing argument focused on Victim 1's lack of credibility as a whole, due to the discrepancy between Victim 1's deposition and her testimony at trial:

Count V, [Victim 1] said she did not know when it happened. She was asked by the prosecutor what happened, what occurred. She said [Creviston] made me sit on his face and that's what she testified to during her direct testimony. That's what the prosecutor asked her, that's what she said happened. When I asked her about the deposition, where she said she was laying down and he placed his face in her crotch, she said, yeah, that's what I said during the deposition. I said now you're telling us something different? No, I'm telling you both of them happened the same day. And I asked her, I said so you're changing your story during your testimony? She's like, yeah, they both happened the same day. She couldn't keep her lies straight, that's what happened. [Creviston's daughter] told you she never saw [Victim 1] straddling [Creviston], never saw anything inappropriate like that. Never saw [Creviston] touch [Victim 1's] vagina at all. This is what happens when you're lying and you can't keep your lies straight.

In **State v. Celis-Garcia**, 344 S.W.3d 150 (Mo. banc 2011), the Supreme Court of Missouri recognized a defendant's right to a unanimous jury verdict in a multiple acts case—*i.e.*, where "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those

9

acts in a single count[,]" such that the jury be instructed that they are required "to agree which of those acts the defendant committed." *Id.* at 155-56, 158.

It has since been observed that *Celis-Garcia* variety "[c]laims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state's instructions may have been motivated by reasonable trial strategy." *State v. Ess*, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part and dissenting in part). Indeed, our Supreme Court thereafter issued *Hoeber v. State*, 488 S.W.3d 648 (Mo. banc 2016), in which the Court specified that "***In the absence of reasonable trial strategy***, trial counsel's failure to object to the insufficiently specific verdict directors did not conform to the degree of skill, care, and diligence of a reasonably competent attorney." *Id.* at 660 (emphasis added).

> A plain-error claim places a much greater burden on a defendant than an assertion of prejudicial error. A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice. To prove plain instructional error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict. Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal. The outcome of plain-error review depends heavily on the facts and circumstances of each case.

*State v. Stuckley*, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) (internal quotations and citations omitted). "When considered on direct appeal, a trial court does not commit plain error for failing to take action when the record clearly indicates that the defendant's counsel strategically allowed that action." *State v. Snyder*, 592 S.W.3d 375, 381 (Mo. App. S.D. 2019) (emphasis omitted).

In the instant matter, the record reflects defense counsel's overall trial strategy was to show that the allegations of Victim 1 regarding Instruction 10 were not credible,

10

and to seek an outright acquittal.[3]  There was evidence of multiple acts by Creviston against Victim 1 in the manner described in Instruction 10—if defense counsel objected on jury-unanimity grounds, this could very well have resulted in the submission of multiple alternative verdict directors to accommodate the multiple evinced instances by Creviston against Victim 1.  This was unlikely to serve defense counsel's strategy of presenting Victim 1 as not credible, and ran the substantial risk of simply reminding the jury of the numerosity of Creviston's acts against Victim 1.

Creviston fails to demonstrate the trial court committed plain error resulting in manifest injustice or miscarriage of justice.  *See **Snyder***, 592 S.W.3d at 381.  Point III is accordingly denied.

## Conclusion

The judgment of the trial court is affirmed.


MARY W. SHEFFIELD, J. –  OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[3] Creviston argues he had an "incident specific defense" because Victim 1's trial testimony and deposition testimony were inconsistent.  But Creviston's defense was not incident specific (*e.g.*, an alibi), but rather a denial that the acts in question had occurred at all, and instead were fabricated by Victim 1.