

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD77406 |
| | ) | |
| v. | ) | OPINION FILED: August 18, 2015 |
| | ) | |
| SANDRA G. PLUNKETT, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Callaway County, Missouri**
The Honorable Gary M. Oxenhandler, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Joseph M. Ellis, Judge and
James E. Welsh, Judge

Sandra G. Plunkett ("Wife") appeals her convictions of first-degree murder and armed criminal action following a jury trial. Wife argues that the trial court erred by refusing to submit a proposed self-defense instruction to the jury, by overruling her motions to suppress evidence, and by admitting testimony at trial regarding the evidence she sought to suppress. Finding no error, we affirm.

**Factual and Procedural History[1]**

Wife married Paul Plunkett ("Husband"), a Jefferson City police officer, in 1998. Husband retired from the police department in 2008 and bought a pest control company from his brother. Wife and Husband operated the business together.

Wife developed a drug addiction to Vicodin and heroin. To fund her drug habit, Wife overdrew thousands of dollars from joint personal and business checking accounts and sold items to a local pawn shop.

Husband developed diverticulitis in the summer of 2009, requiring several surgeries and hospitalizations. By the end of 2010, Husband was generally confined to a hospital bed in the living room of his home in Holt's Summit. Husband had an open wound, a feeding tube, tubes for intravenous drugs, and a colostomy bag. Husband had to wear an abdominal binder to be able to get out of bed and move around. Husband's heart was enlarged and his legs had atrophied to the point that moving around required great effort.

Sometime during the week after Christmas in 2010, Wife asked a drug associate, Randy Deppe ("Deppe"), if he knew anyone who would kill Husband. On December 30, 2010, Wife again asked Deppe if he knew anyone who would kill Husband and mentioned something about an insurance check. Wife told Deppe that Husband would not die and admitted to putting morphine and heroin in Husband's IV drip in an attempt to kill him.

---

[1] We view the facts in the light most favorable to the jury's verdict. *State v. Jackson*, 410 S.W.3d 204, 209 n.3 (Mo. App. W.D. 2013).

Later on December 30, 2010, Wife took a Marlin .22-caliber rifle to a pawn shop. Wife asked the store clerk to show her how to load the rifle. The clerk told Wife the kind of ammunition needed for the rifle.

Before 10:00 a.m. on January 1, 2011, Wife shot Husband in the head with the Marlin rifle, killing him. Wife left the house and drove to Jefferson City to buy heroin. She then drove to a nearby cul-de-sac and disposed of the rifle in the woods. She disposed of a box of ammunition while driving on a gravel road in New Bloomfield.

Between 12:45 p.m. and 12:50 p.m. on January 1, 2011, Wife called 911 and reported that a man in camouflage was in the middle of the street pointing a rifle at her house. She reported that she had arrived home to discover her Husband had been shot. A police officer arrived. The officer could not see into Wife's house because the blinds were closed, and no one immediately answered the front door. The officer started toward the back of the house when Wife opened the carport door holding a handgun. Wife told the officer she did not know how to use the gun.

Wife led the officer into the house. She lifted and turned Husband's head to show the officer an entry wound on the right side. Wife said the man in camouflage was a white male in his fifties. Wife said she grabbed the handgun, which Husband kept in a holster near his bed, and tried to fire it out the door to scare the man but could not fire the gun. Wife said she tried to do the same with a rifle.

Paramedics arrived on the scene. As the paramedics moved Husband, a .22-caliber shell casing rolled onto the floor. The shell casing was consistent with having been fired from a Marlin rifle.

Wife continued to claim to police that Husband was shot by a camouflaged gunman. Wife denied that she or Husband were experiencing financial problems and denied that she had current drug problems. The police ruled out people Wife identified as potential suspects.

The police contacted family members and determined that a Marlin rifle was missing from the home. Police learned of Wife's drug problem and interviewed Deppe about his conversations with Wife.

On January 3, 2011, the police again interviewed Wife. This time, Wife claimed that Husband asked her to find someone who would kill him because he wanted to die. Wife said Deppe agreed to kill Husband and that she left a rifle in the garage for Deppe. Police re-interviewed Deppe, who denied any involvement in the murder.

On January 4, 2011, the police again interviewed Wife. This time, Wife said she killed Husband at his request. Wife led investigators to the rifle. Wife was arrested and later charged with first-degree murder and armed criminal action.

Both before and after Wife's arrest, Prosecutors secured investigative subpoenas from the trial court pursuant to section 56.085.[2] Before Wife was arrested, Jefferson Bank and Hawthorne Bank received subpoenas that requested account information for Husband and Wife's joint bank accounts. After Wife was arrested, United Healthcare received subpoenas that requested information about a life insurance policy worth $100,000 owned by Husband. In lieu of appearing in person at the prosecutor's office to

---

[2] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

4

deliver the records and to submit to oral examinations under oath, the subpoenaed businesses simply submitted the subpoenaed records to police investigators.

Wife filed motions to suppress the subpoenaed records. Relevant to this appeal, Wife argued that her Fourth Amendment right against unreasonable searches and seizures was violated when the State waived the statutory requirement that representatives from the subpoenaed businesses produce the records and appear at the prosecutor's office for oral examinations under oath. Wife also argued that the subpoenas issued to United Healthcare for insurance policy records violated the Fourth Amendment because the State failed to provide Wife notice of the subpoenas.

The trial court overruled Wife's motions to suppress. The trial court ruled in pertinent part that:

> Investigative subpoenas must be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *Johnson v State*, 925 SW 2d 834 (Mo banc 1976). Parenthetically, assuming that it is the burden on the [subpoenaed party] that must be analyzed, that burden is certainly lessened by permitting the [subpoenaed party] to simply send the documents without an appearance.

The trial court also found that the United Healthcare insurance policy belonged to Husband, and that Wife had no ownership interest in the policy.

At trial, Wife timely objected to admission of the subpoenaed records by referencing her motions to suppress. The trial court overruled Wife's objections and elected to stand by its ruling on the motions to suppress.

At trial, Wife testified that she had been abused by Husband for a number of years and killed Husband in self-defense. Wife testified that on the day of the killing, she and

5

Husband got into an argument and Husband kicked her. Wife testified that she went to the bathroom and then returned to the living room when Husband, angry and shaking, reached for a handgun next to his bed. Wife stepped into the kitchen and picked up the rifle. From the kitchen, Wife testified that she could see Husband reaching for the handgun. Wife returned to the living room and shot Husband. She testified that she felt she had to shoot Husband to defend herself.

During the jury instruction conference, the State tendered Instruction No. 6, a self-defense instruction patterned after MAI-CR3d 306-06A. Wife affirmatively indicated that she was "in accord" with Instruction No. 6. Wife later tendered a separate, stand-alone instruction which, in summary, provided that a person has no duty to retreat if lawfully in their own home. The trial court refused Wife's tendered instruction.

The jury found Wife guilty of first-degree murder and armed criminal action. The trial court sentenced Wife to life in prison without the possibility of parole for murder and a concurrent term of seven years for armed criminal action.

Wife timely appealed.

## Summary of Issues on Appeal

Wife raises five points on appeal. In her first point, Wife argues that the trial court abused its discretion by refusing to submit her tendered "no duty to retreat" instruction because it would have responded to the State's anticipated closing argument that Wife's use of deadly force was unreasonable because she could have left the house from two exits in the kitchen. In her second point, Wife argues that the trial court erred by overruling her motions to suppress the subpoenaed bank records because the State waived

6

the section 56.085 requirement that a person producing subpoenaed records appear for oral examination under oath. In her third point, Wife argues the trial court erred by overruling her motion to suppress the subpoenaed insurance policy records because the State waived the section 56.085 requirement that a person producing subpoenaed records appear for oral examination under oath and because the State failed to give Wife advance notice of the subpoenas. In her fourth and fifth points, Wife respectively argues that the trial court erred by admitting testimony regarding the contents of the insurance policy and bank records because the testimony was impermissible "fruit of the poisonous tree."

### Point One

Wife asserts that the trial court's refusal to submit her tendered instruction was an abuse of discretion because she should have been permitted to inform the jury that she had no duty to retreat pursuant to section 563.031.3.

### Standard of Review

Pursuant to Rule 28.02(a) "[i]n every trial for a criminal offense the court shall instruct the jury in writing upon all questions of law arising in the case that are necessary for their information in giving the verdict." Rule 28.02(f) provides the proper standard of review: "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes On Use *shall constitute error*, the error's prejudicial effect to be judicially determined." (Emphasis added.) Thus, "[t]he trial court's refusal to give a party's proffered instruction is reviewed *de novo,* evaluating whether the instructions were supported by the evidence and the law." *Cluck v. Union Pac. R. Co.*,

7

367 S.W.3d 25, 32 (Mo. banc 2012).[3] "The trial court's judgment will be reversed only if such an error results in prejudice . . . ." *Id.* "Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial." *State v. Anderson*, 306 S.W.3d 529, 534 (Mo. banc 2010).

**Analysis**

"Rule 28.02(c) mandates the exclusive use of the Missouri Approved Instructions–Criminal whenever there is an instruction applicable under the law." *State v. Davis*, 203 S.W.3d 796, 798 (Mo. App. W.D. 2006). "Whenever there is an MAI–CR instruction applicable under the law . . ., the MAI–CR instruction is to be given to the exclusion of any other instruction." *State v. Deck*, 303 S.W.3d 527, 545 (Mo. banc 2010) (internal quotations omitted).

Here, Wife used deadly force and alleged to have done so in self-defense. Section 563.031.2 addresses the use of deadly force self-defense:

> 2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section[4] unless:
>
> (1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony;
>
> (2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person; or

---

[3] Even though *Cluck* was addressing Rule 70.02(a) and (c), which apply to jury instructions in civil cases, there is no reason to believe that *Cluck's* holding would not apply to jury instructions in criminal cases given the substantial similarities between Rule 70.02(a), (c) and Rule 28.02(a), (f).

[4] Subsection 1 permits the use of "physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person," unless an enumerated exception applies.

8

(3) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual claiming a justification of using protective force under this section.

Sections 563.031.2(2) and (3) plainly do not apply to Wife's circumstances, as Husband was lawfully present in his own home when he was killed by Wife. Wife's right to use deadly force self-defense thus necessarily relied on section 563.031.2(1).

The trial court instructed on self-defense using a State tendered instruction modeled after MAI-CR3d 306.06A. MAI-CR3d 306.06A "covers only the basic use of force [including deadly force] in self-defense." MAI-CR3d 306.06A, Notes on Use 1. Consistent with the requirements of section 563.031.2(1), the State's self-defense instruction provided, in pertinent part, that:

> In order for a person lawfully to use force in self-defense, she must reasonably believe such force is necessary to defend herself from what she reasonably believes to be the imminent commission of a forcible felony. But, a person is not permitted to use deadly force unless she reasonably believes that the use of deadly force is necessary to protect herself against the commission of a forcible felony.

The instruction defined "reasonably believe" as "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared."

When asked by the trial court during the jury instruction conference to confirm that she was "in accord" with the self-defense instruction tendered by the State, Wife answered "yes, sir." Wife did not object that the instruction failed to comport with the substantive law and did not seek to modify the instruction in any way.

9

Wife later tendered, however, a separate, stand-alone instruction she claimed was required by section 563.031.3. Section 563.031.3 provides that "[a] person does not have a duty to retreat from a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining. A person does not have a duty to retreat from private property that is owned or leased by such individual." Wife's tendered instruction quoted section 563.031.3 verbatim.

Wife's tendered instruction was a non-MAI instruction. "A non-MAI instruction must follow the substantive law." *Davis*, 203 S.W.3d at 799. And, if an MAI-CR instruction is modified or a non-MAI instruction used, then the modification or non-MAI instruction "shall be simple, brief, impartial, and free from argument" and "where possible, shall follow the format of MAI-CR instructions, including the skeleton forms therein." Rule 28.02(d). We must affirm the trial court's decision to refuse Wife's tendered instruction if the decision can be supported on either basis.

Wife's tendered instruction failed to comport with Rule 28.02(d) because the use of a *separate* instruction to address the duty to retreat did not follow the format of MAI-CR instructions and because the instruction failed to use language that was simple and brief. The proof of this point is best demonstrated by MAI-CR3d 306.11, the self-defense instruction applicable where force (including deadly force) is used by a person "against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person." MAI-CR3d 306.11, Notes on Use 1 (referencing section 563.031.2(2)). MAI-CR3d 306.11 incorporates the "no duty to retreat" principle described in section 563.103.3 in

10

simple terms by providing in Part A, paragraph [2] that "[a] person lawfully occupying a (dwelling) (residence) (vehicle) is not required to retreat before resorting to the use of force to defend himself." MAI-CR3d 306.11. If Wife believed that the "no duty to retreat" principle applied to her circumstances, then it was incumbent upon Wife to oppose Instruction No. 6 and to tender in lieu thereof a modified version of MAI-CR3d 306.06A modeling the reference to "no duty to retreat" that appears in MAI-CR3d 306.11[2]. Wife did not do so. Instead, she affirmatively approved the State's use of Instruction No. 6 patterned after MAI-CR3d 306.06A, thus representing to the trial court that she believed the instruction complied with the law. Wife's subsequent tender of a stand-alone "no duty to retreat" instruction that presented an abstract statement of law placed emphasis on the "no duty to retreat" principle without context or cross-reference to the self-defense instruction, creating potential confusion. The trial court did not legally err in refusing Wife's proffered instruction because it was not in proper form.

Because Wife's proffered instruction was not in the form required by Rule 28.02(d), we need not address Wife's contention that section 563.031.3 applies not only where "a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter" a dwelling, residence, vehicle, or private property owned or leased, and lawfully occupied by the defendant, (the subject of MAI-CR3d 306.11), but as well where force (including deadly force) is used against a victim who is *lawfully* present along with a defendant in a dwelling, residence, vehicle, or private property owned or leased by the defendant. And in any event, as noted, Wife waived any claim of error in this regard when she affirmatively approved the State's proffered self-defense instruction

11

without objecting that it failed to instruct on Wife's lack of a duty to retreat. *See State v. Wurtzberger*, 40 S.W.3d 893, 897 (Mo. banc 2001) (holding a defendant "waived appellate review" when the defendant both failed to object to a proposed instruction and "told the court expressly that he had no objection to the instruction").

Even were we to conclude, (which we do not), that the trial court erred in refusing to submit Wife's instruction, we would not reverse Wife's conviction unless the refusal was prejudicial to Wife. *Marion*, 199 S.W.3d at 894. "Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial." *Anderson*, 306 S.W.3d at 534. Wife cannot satisfy this standard.

The jury heard evidence regarding Wife's claim of self-defense. The jury heard evidence which revealed that Wife's claim of self-defense represented the fourth explanation in a series of evolving explanations she had offered for Husband's death. The jury convicted Wife of first-degree murder, which necessarily means that the jury concluded that Wife premeditated before killing Husband. In the process, the jury rejected several lesser included offense instructions. On this record, it appears plain that the jury simply did not believe Wife's trial testimony that Husband died because Wife was defending herself. The refusal to submit Wife's stand-alone "no duty to retreat" instruction was not outcome determinative. There is no reasonable probability that the trial court's refusal of Wife's tendered instruction affected the outcome at trial.

Point one is denied.

12

## Points Two, Three, Four, and Five

Points two, three, four, and five challenge the denial of motions to suppress regarding, and the subsequent admission of, subpoenaed records. We address the points collectively.

Wife asserts that her Fourth Amendment right to be free from unreasonable searches and seizures was violated because the State waived the statutory requirement that witnesses produce subpoenaed bank and insurance policy records by oral examination under oath (Points two and three). Wife also asserts that her Fourth Amendment right was violated because she received no notice of the subpoenas issued for the insurance policy records even though the subpoenas were issued after she was charged (Point three). Finally, Wife argues that all trial testimony regarding the subpoenaed bank and insurance policy records should have been excluded as fruit of the poisonous tree (Points four and five).

## Standard of Review

"A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous." *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). "The trial court's ruling will be found to be clearly erroneous only if we are left with a definite and firm belief that a mistake has been made." *State v. Mosby*, 94 S.W.3d 410, 415 (Mo. App. W.D. 2003) (internal quotations omitted). "[An appellate court] defers to the trial court's factual findings and credibility determinations . . . and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Sund*, 215

13

S.W.3d at 723. "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*." *Id.*

**Analysis**

"The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures." *Mosby*, 94 S.W.3d at 415 (quoting *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999)).[5] "But the 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy . . . .'" *State v. Brown*, 382 S.W.3d 147, 157 (Mo. App. W.D. 2012) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Inherent to the potential success of each of Wife's points on appeal, therefore, is this question: did Wife possess a legitimate expectation of privacy with respect to the subpoenaed records?

Wife claims that she had a reasonable expectation of privacy in the bank and insurance records because the State conceded she had a privacy interest in the bank records[6] and because she was named as a beneficiary on Husband's policy and wrote the checks to pay the policy premiums.[7] Wife's arguments are inconsistent with Missouri precedent.

---

[5] "Missouri's constitutional 'search and seizure' guarantee, article I, section 15, is co-extensive with the Fourth Amendment." *Deck*, 994 S.W.2d at 534.

[6] The State on appeal denies that it made this concession. Because questions regarding Fourth Amendment violations are reviewed *de novo*, it is immaterial whether the State conceded Wife had a privacy interest in the bank records.

[7] These arguments first appeared in Wife's brief on appeal. Wife never argued that she had a privacy interest in either the bank records or the insurance policy records in her motions to suppress and only argued at the evidentiary hearing on the motions to suppress that she had "some sort of privacy interest" in the insurance policy records because she was a beneficiary.

14

"Records of a depositor's account maintained by a bank are business records of the bank, not of the bank depositor. The depositor [thus] has no claim to the records based on ownership or possession and he therefore has no expectation of privacy associated with the records which is protected under the Fourth Amendment." *State v. Brown*, 689 S.W.2d 63, 67 (Mo. App. W.D. 1985) (citing *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976)). Because the Supreme Court has held that a bank depositor has no expectation of privacy with respect to records maintained by the bank, Wife's Fourth Amendment rights were not implicated by the subpoenas seeking Husband and Wife's joint bank records.[8]

We reach the same conclusion with respect to the insurance policy records obtained by subpoena. The insurance policy records--Husband's request for insurance and checks submitted to pay policy premiums--were business records owned and maintained by United Healthcare. Wife had no legitimate expectation of privacy in the insurance records, a conclusion that is only enhanced by the fact that the insurance policy in question was owned solely by Husband. Even though Wife claimed to have written checks to pay the premiums for the policy, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442

---

[8] In 1989, the General Assembly enacted The Missouri Right to Financial Privacy Act ("MRFPA"), section 408.675, *et seq*. The MRFPA provides that "no governmental authority may have access to . . . information contained in the financial records of any customer unless the financial records are reasonably described" and the customer has consented to the disclosure or a subpoena or written request comporting with MRFPA is issued for the records. Section 408.677. Wife has never contended that she had a Fourth Amendment privacy right in the bank records because of the MRFPA. In fact, neither party has made reference to the MRFPA in this case. Thus, the parties have not addressed the effect (if any) of the MRFPA on the United States Supreme Court's determination that a bank customer has no legitimate expectation of privacy in bank records sufficient to support a claimed violation of the Fourth Amendment. We decline to address this issue as it has not been preserved for our review.

15

U.S. 735, 743-44 (1979). Wife's Fourth Amendment rights were not implicated by the subpoenas seeking the insurance policy proceeds.

There is an even more fundamental problem with Wife's claim that her Fourth Amendment rights were violated. Wife bases that claim on the State's purported failure to comply with section 56.085. Section 56.085 authorizes a prosecuting attorney in the course of a criminal investigation to request the issuance of an investigative subpoena "to any witness who may have information for the purpose of oral examination under oath to require the production of books, papers, records, or other material of any evidentiary nature at the office of the prosecuting or circuit attorney requesting the subpoena." Wife argues that because the State did not require the subpoenaed businesses to produce records on oral examination under oath, the State violated section 56.085, and thus violated her Fourth Amendment rights.[9]

Wife's argument is unavailing. Wife does not explain how the State's failure to insist that subpoenaed documents be delivered on oral examination under oath, even if a "violation" of section 56.085,[10] serves to create the legitimate expectation of privacy in the subpoenaed documents essential to her Fourth Amendment claim. The violation of a

---

[9] Wife also argued in her motion to suppress that the failure to give her notice of subpoenas issued to secure the insurance policy records violated section 56.085 because she received no notice of the subpoenas although she had already been charged. Section 56.085 does not impose an obligation to provide notice of an investigative subpoena to the subject of a criminal investigation.

[10] Although we need not address whether the State "violated" section 56.085 by waiving the requirement of production of records on oral examination under oath, we find persuasive the trial court's observation in its order denying Wife's motions to suppress that "[i]nvestigative subpoenas must be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. *Johnson v State*, 925 SW 2d 834 (Mo banc 1976). Parenthetically, assuming that it is the burden on the [subpoenaed party] that must be analyzed, that burden is certainly lessened by permitting the [subpoenaed party] to simply send the documents without an appearance." Wife has never argued that the investigative subpoenas were not sufficiently limited in scope, relevant in purpose, and specific in directive. *Cf. State v. Clampitt*, 364 S.W.3d 605, 612-13 (Mo. App. W.D. 2012).

16

rule or statute involving criminal discovery or investigative tactics does not *per se* implicate a constitutional violation.[11] *See, e.g., United States v. Agurs*, 427 U.S. 97, 108 (1976) (*overruled on other grounds*, as stated in *Kowalczyk v. United States*, 936 F.Supp. 1127, 1145-46 (E.D.N.Y. 1996) (holding that a discovery violation, without more, does not violate the Due Process clause "unless the [prosecutor's] omission deprived the defendant of a fair trial"); *State v. Ghan*, 721 S.W.2d 128, 132 n.5 (Mo. App. W.D. 1986) (addressing the distinction, and potential overlap between, violation of a criminal discovery rule supporting sanctions, and a *Brady* violation implicating due process concerns).

Points two, three, four, and five are denied.

## Conclusion

Wife's conviction is affirmed.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur

---

[11] Obviously, if incriminating or exculpatory material is obtained through investigative subpoenas, a defendant will be entitled to access to the material through the mandatory disclosures required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Rule 25.03. Wife, in fact, received the bank and insurance policy records obtained through the State's investigative subpoenas by virtue of the operation of these mandatory disclosure rules.