

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD80418 |
| v. | ) |
| | ) OPINION FILED: |
| | ) April 2, 2019 |
| THOMAS RICHARD DEMARK, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Buchanan County, Missouri
The Honorable Patrick K. Robb, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Anthony Rex Gabbert, Judges

Mr. Thomas Demark ("Demark") appeals from his conviction, following a trial by jury before the Circuit Court of Buchanan County, Missouri ("trial court"), of attempted child enticement, section 566.151,[1] for which he was sentenced to five years' imprisonment. Demark raises five points on appeal. Demark argues instructional, closing argument, and evidentiary errors. We affirm.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as updated through the 2014 Non-Cumulative Supplement, unless otherwise noted.

**Factual and Procedural Background**[2]

In May 2015, Detective Thomas Cates of the Buchanan County Sheriff's Department was working on the Western Missouri Cyber Crimes Task Force, which investigates various computer-facilitated crimes against children. At all relevant times to this case, Detective Cates used the undercover identity of Mika Williams ("Mika"), posing as a thirteen-year-old girl. In that capacity, Mika responded to an advertisement placed by Demark, a 49-year-old male, on the Craigslist website on May 19, 2015, titled "Daddy/Daughter Play . . . Taboo." In Mika's response to the advertisement, Mika represented herself to be a thirteen-year-old female. Demark gave Mika his personal email address and subsequently used email, instant messaging, and Craigslist to communicate with Mika.

Thereafter, between May 16 and May 20, Demark sent numerous suggestive and explicit communications to Mika. He suggested they could play "daddy and stepdaughter" and that it would have to be their secret. Demark asked Mika if she baby-sat and suggested that could be a way to get out so they could meet. He asked for pictures and information about Mika's physical characteristics, including her bra size and the size of her buttocks. Demark referred to himself as "Daddy" and to Mika as "Baby girl." Demark told Mika he wanted to be with a young woman or girl and pretend that she was his daughter or stepdaughter, which he said was "[s]omewhat kinky" and excited him. He asked Mika if she was aroused by the idea, asked her about her own sexual experience, and told her he wanted to teach her about sex. Demark asked Mika if she wanted a picture of his "thick cock" and then sent two pictures of a penis to the email address Detective Cates gave as Mika's.

---

[2] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Rice*, 504 S.W.3d 198, 200 n.3 (Mo. App. W.D. 2016).

2

Detective Cates then stopped replying to communications from Demark from May 21 to May 25, to give Demark a chance to change his mind about trying to engage in sexual conversation with a child. Demark, however, continued to try to contact Mika, and Detective Cates resumed communicating with him as "Mika." Demark suggested specific times when he and Mika could meet in person and suggested she bring bathing suits or "sexy bras and thongs."

Demark eventually arranged to drive from Kansas City to St. Joseph to meet Mika at an apartment complex where he had been told that she lived. The address was really an apartment used by the sheriff's department for undercover operations. Detective Cates assembled a team of officers to assist in arresting Demark when he arrived. After Demark entered the apartment, two officers hiding by the door identified themselves as law enforcement and grabbed Demark by the shoulders. Demark backed up until all three men slammed into the door of the apartment across the hall. Demark was reaching his right hand into a backpack (later determined to contain a weapon) he was holding in his left hand. Detective Cates came out of hiding when he heard the commotion; an altercation ensued, and Demark was eventually subdued and placed under arrest for investigation of enticement.

Demark consented to a search of his backpack, which was found to contain a pistol and holster, bullets, various sex toys, lubricant, condoms, band-aids, bubble gum, mouthwash, sanitary wipes, empty plastic bags, a white towel, and a bottle of liquid bubbles. Officers found a note in Demark's car written on his letterhead containing detailed directions to the apartment.

Demark gave a written statement to police, in which he admitted to posting the Craigslist ad looking for girls who were "interested in a daddy/daughter oriented sexual relationship." He admitted to communicating with a girl named Mika who informed him she was thirteen years old. He said the conversations became sexual and that he traveled to St. Joseph from Kansas

3

City to have sex with her. Demark requested to add a line to the statement saying that Mika seemed to be a willing participant "to the whole thing." At the time of the statement, Demark had not been told that he had been communicating with an undercover officer rather than a thirteen-year-old girl. Detective Cates described Demark's behavior during the interview as dismissive and "rather flippant about the allegations and about the case that he was facing."

At trial, Demark testified that he was engaged in sexual role-playing and thought he was doing so with an adult pretending to be a young girl. Specifically, Demark testified that he believed the person he was communicating with was indicating a willingness to engage in consensual sex in which "Mika" was posing as, or playing the role of, a female child—but was, in fact, an adult.

The jury rejected Demark's explanation and found him guilty of the charge of attempted enticement of a child. The trial court sentenced him to five years' imprisonment. This appeal timely follows.

**Analysis**

Section 566.151.1 provides that

> [a] person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

"The enticement statute is also subject to the general attempt statute." *State v. Rice*, 504 S.W.3d 198, 202 (Mo. App. W.D. 2016). Section 564.011 is the general attempt statute, and makes a person guilty of attempt to commit an offense when "he does any act which is a substantial step towards the commission of the offense. A **'substantial step'** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

4

§ 564.011. *See also State v. Craig*, 498 S.W.3d 459, 464 (Mo. App. W.D. 2016) (The mental state prescribed for attempted enticement of a child is that the actor took a substantial step toward persuading, coaxing, enticing, or luring a child under the age of fifteen for the purpose of engaging in sexual conduct with her.).

## I.

In Point I, Demark argues that the trial court plainly erred in giving the verdict-directing instruction. Demark concedes he failed to object to the verdict director submitted to the jury and to include such objection in a motion for new trial. He therefore requests that we review his claim for plain error.

Rule 30.20 governs plain error review and provides for a two-step process. *State v. Drake*, 514 S.W.3d 633, 638 (Mo. App. W.D. 2017). That process includes the following:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court must then proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*State v. Kunonga*, 490 S.W.3d 746, 760 (Mo. App. W.D. 2016) (citations omitted) (internal quotation marks omitted). "Instructional error seldom rises to the level of plain error." *State v. Escobar*, 523 S.W.3d 545, 548 (Mo. App. W.D. 2017) (internal quotation marks omitted).

The Missouri Constitution guarantees defendants the right to a unanimous jury verdict. *Drake*, 514 S.W.3d at 638 (citing *State v. Celis-Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011)). For the jury verdict to be unanimous, "'the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.'" *Celis-Garcia*, 344 S.W.3d at 155 (quoting 23A C.J.S. *Criminal Law* § 1881 (2006)).

"The factual scenario presented by [Demark's] case [as *presently* argued by Demark on appeal] is commonly referred to as a 'multiple acts' case." *Id.* "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.* at 155-56. Here, Demark was charged with sending numerous electronic communications to Detective Cates posing as Mika, a thirteen-year-old child. *See State v. Wadsworth*, 203 S.W.3d 825, 834 (Mo. App. S.D. 2006) ("Defendant's actions constituted a series of offenses. He made numerous attempts to entice [Mika] for purposes of engaging in sexual conduct."). For the first time, on appeal, Demark argues that each of these multiple communications as alleged by the State must be treated as a distinct criminal act that could serve as the basis for a criminal charge of attempted enticement in violation of section 566.151.1. Conversely, the State argues that, taken together, the communications were part of a single effort to entice Mika to engage in sexual conduct. We need not, and do not, decide whether this case presents a "multiple acts" case as any alleged instructional error has not affected the verdict.

At Demark's trial, the relevant jury instruction stated:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or between May 19, 2015 and May 30, 2015, in the County of Buchanan, State of Missouri, the defendant sent multiple electronic communications to a person he believed to be less than fifteen years of age suggesting that he pick her up and take her to his house, and

Second, that such conduct was a substantial step toward the commission of the offense of enticement of a child by attempting to entice a person less than fifteen years of age to engage in sexual conduct, and

Third, that defendant engaged in such conduct for the purpose of committing such enticement of a child, and

Fourth, that the defendant was twenty-one years of age or older,

then you will find the defendant guilty of attempted enticement of a child.

6

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of enticement of a child if he is a person at least twenty-one years of age or older and he persuades, solicits, coaxes, entices, or lures a person less than fifteen years of age for the purpose of engaging in sexual conduct with the defendant.

As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of enticement of a child. It is no defense that it was factually or legally impossible to commit enticement of a child if such offense could have been committed had the circumstances been as the defendant believed them to be.

Under this instruction, Demark argues the jurors could convict Demark if they found that he attempted to entice Mika in any one or more of his numerous, distinct, sexually explicit communications with her. Thus, Demark claims the verdict director "made it impossible to determine which of the sexual[ly explicit communications] the jury agreed the defendant committed in finding him guilty." *Celis-Garcia*, 344 S.W.3d at 157. Accordingly, Demark argues the trial court erred in submitting the foregoing verdict-directing instruction. However, even were we to agree that the trial court erred in failing to correctly instruct the jury, we must still examine the issue of whether this alleged error "resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal." *Id.* "The question [becomes], therefore, whether the error affected the verdict." *Escobar*, 523 S.W.3d at 551.

In *Celis-Garcia*, the Court found it relevant to the prejudice analysis that the defense was relying on "evidentiary inconsistencies and factual improbabilities" as to *each* allegation of criminal contact, and therefore it was "more likely that individual jurors convicted her on the basis of different acts." *Celis-Garcia*, 344 S.W.3d at 159. Here, however, Demark does *not* contest that he sent *all* of the sexually explicit emails to "Mika." Instead, his defense was

7

general; that is, Demark claimed that he believed he was communicating with an adult role-playing and posing as a thirteen-year-old girl.

In *Hoeber v. State*, 488 S.W.3d 648 (Mo. banc 2016), the Court explained that, in spite of the relevance of the theory of defense put forth at trial, a defendant with a general defense, rather than an incident-specific defense, may still be able to show prejudice. *Id.* at 657. In *Hoeber*, the evidence consisted of "conflicting statements about multiple incidents of hand-to-genital contact" and "the state argued that Mr. Hoeber had abused [his victim] multiple times and at least on two occasions." *Id.* Because the verdict directors in *Hoeber* did not specify a particular act or incident, and there was evidence of multiple, separate acts, each of which could have supported the charged offenses, the Court found that the verdict directors "created a real risk that the jury verdicts were not unanimous" and thus found the defendant was prejudiced.[3] *Id.* at 657-58.

Conversely, in the present case, the facts are distinguishable from *Celis-Garcia* and *Hoeber* and more similar to *State v. Escobar*. In *Escobar*, the victim testified generally to repeated acts over one particular six-month date range and then another identical pattern of abuse over a later six-month period. 523 S.W.3d at 552. The defense consisted of only a general denial of ***all*** abuse, and the victim was consistent in her allegations. *Id.* at 552-53. We found that, "[g]iven the totality of the circumstances, the nature of [the victim's] testimony, and Escobar's defense, there is no reasonable argument that the alleged error affected the verdict." *Id.* at 553.

Similarly, Demark's defense was a general denial of ***all*** misconduct, claiming he was engaging in role-playing and not actual sexual solicitation to a child. There was no inconsistency

---

[3] The standard for establishing prejudice in *Hoeber* was lower than that for establishing plain error, because the claim was not one involving an unpreserved claim of error, as here.

in the evidence against Demark, and Demark does not dispute the authenticity of any of the sexually explicit electronic communications. The combination of Demark's general denial theory of defense, the consistency of the uncontested evidence against him, and the lack of any incident-specific defense makes it highly unlikely that some jurors convicted Demark because they rejected his defense as to one or more of the communications but accepted it as to one or more of the other communications, while other jurors convicted Demark in similar fashion but as to different communications. The members of the jury had only to decide whether they found Demark's defense theory credible, and Demark's conviction shows that they did not. Hence, Demark's juror unanimity constitutional complaint is without merit. Likewise, Demark fails to demonstrate that instructional error affected the verdict. "Therefore, we find that [Demark] has failed to meet his burden to prove manifest injustice or a miscarriage of justice warranting reversal under our standard of review." *Id.*

Point I is denied.

## II.

In Point II, Demark claims that the trial court erred in refusing to give his proposed instructions on the affirmative defense of consent. Unlike Point I, Demark preserved his claim of instructional error in Point II. Thus, "[t]he trial court's rejection of [Demark's] proffered [consent] instruction is subject to *de novo* review." *State v. Sanders*, 522 S.W.3d 212, 215 (Mo. banc 2017). "The trial court's rejection of a proffered instruction should be affirmed if the trial court was correct . . . for any reason." *Id.* (internal quotation marks omitted). "Jury instructions must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Smith*, 353 S.W.3d 100, 106 (Mo. App. W.D. 2011) (internal quotation marks omitted).

Demark's proposed instructions on consent were as follows:

9

INSTRUCTION NO. C
ADDITION TO VERDICT DIRECTOR

That the attempted enticement of Mika Williams in this case was not consented to as submitted in Instruction No. ___.

INSTRUCTION NO. D

One of the issues in this case is whether the attempted enticement of Mika Williams was consented to. The burden rests upon the defendant by the greater weight of the credible evidence that he is not guilty by reason of such consent.

Lack of consent may be expressed or implied.

Demark argues that because section 566.020.3 states that "[c]onsent is not an affirmative defense to any offense under chapter 566 if the alleged victim is less than twelve years of age," the opposite principle must also be true as to any offense under chapter 566—specifically, that Demark's attempted enticement of "an alleged 13-year-old which was consented to is not a criminal act under § 566.151."

Demark's argument relies upon the faulty premise that "Mika" was, in fact, a real person who "consented" to sex with Demark. "She" was not. To the contrary, "Mika" was, in fact, Detective Cates, and Demark makes no argument (nor could he) that Detective Cates was "consenting" to sex with Demark. Detective Cates was merely allowing Demark to engage in conduct in which Demark believed he was succeeding in enticing a child to engage in sex. Of significance, "[i]t is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor." § 566.151.2. Instead, the provisions of the general attempt statute apply to prosecutions for attempted enticement of a child. *State v. Faruqi*, 344 S.W.3d 193, 202 (Mo. banc 2011). In pertinent part, the general attempt statute states, "It is no defense to a prosecution under this section that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of

10

commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be." § 564.011.2.

Demark failed to provide the trial court a factual basis for asserting his proposed jury instruction asserting "consent" and the trial court did not err in refusing Demark's proposed consent instructions.

Point II is denied.

### III.

In Point III, Demark contends that the trial court erred in "overruling his objections" to the State's closing argument; though, Demark admits on appeal that he failed to object to the State's closing argument about which he now complains. Therefore, this claim is limited to plain error review. *State v. Deck*, 303 S.W.3d 527, 541 (Mo. banc 2010). As the decision whether to object is frequently a matter of trial strategy, plain error relief is rarely appropriate for claims of improper closing arguments. *Id.* Furthermore,

> [c]losing arguments must be examined in the context of the entire record. Under plain error review, a conviction will be reversed for improper closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice. The burden to prove decisive effect is on the appellant.

*Id.* (citations omitted). "A decisive effect is shown when there is a reasonable probability that the verdict would have been different in the absence of the argument." *State v. Chism*, 252 S.W.3d 178, 186 (Mo. App. W.D. 2008). "Prosecutors can comment on the guilt of a defendant when the opinion is based on the evidence." *Id.* at 187. A prosecutor is also permitted to comment on witness credibility in closing arguments. *Id.* at 188. And, like here, if a defendant testifies on his own behalf, his testimony is subject to closing argument on credibility, *State v. Jacobs*, 939 S.W.2d 7, 11 (Mo. App. W.D. 1997), and a prosecutor can properly point to a defendant's motive to lie, *State v. Juarez*, 26 S.W.3d 346, 357 (Mo. App. W.D. 2000).

11

Here, the closing argument complained of was that the prosecutor pointed out Demark's "lies" in his testimony about the undisputed sequence of electronic communications, Demark's unsupported claim that Mika had claimed to be seventeen, and Demark's unreasonable suggestion that he was "computer illiterate"—even though he was the one that created the Craigslist post and seemingly had no problem initiating and continuing electronic communications with "Mika" over numerous internet mediums. Simply put, this closing argument was permissible; and, where the defense of this case relied upon the credibility of Demark's testimony, Demark simply cannot establish that *any* of his untimely closing argument complaints[4] rises to the level of a "decisive effect" on the verdict, and hence, he fails to demonstrate manifest injustice. The jury simply did *not* find Demark's testimony credible, which led to his conviction.

Point III is denied.

## IV.

In Point IV, Demark contends that the trial court erred in overruling his motion to suppress evidence of his electronic communications to Craigslist and Google obtained from those entities, and in permitting that evidence to be used in cross-examination because the evidence was seized under unlawful search warrants Demark claims to have been overbroad.

Reversal of a trial court's ruling on a motion to suppress is warranted only if the ruling is clearly erroneous. *State v. Plunkett*, 473 S.W.3d 166, 174 (Mo. App. W.D. 2015). The ruling of the trial court will only be found to be clearly erroneous "'if we are left with a definite and firm belief that a mistake has been made.'" *Id.* (quoting *State v. Mosby*, 94 S.W.3d 410, 415 (Mo.

---

[4] Demark also complains about closing argument comments by the prosecutor about his expert witnesses; yet, all of the arguments were primarily focused on discounting the expert arguments as based upon incomplete or inaccurate factual backgrounds provided to the experts by defense counsel and the fact that the expert witnesses had been paid for their time in preparing for, and testifying at, trial. These arguments were all accurate statements of the evidence at trial and were not impermissible.

App. W.D. 2003)).  In making this determination, we review the evidence presented at both the suppression hearing and the trial.  *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999).  "This Court defers to the trial court's factual findings and credibility determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling."  *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citation omitted).  "Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*."  *Id.*

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure.'"  *Smith v. Maryland*, 442 U.S. 735, 739, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (quoting U.S. CONST. amend. IV).  Rights under the Fourth Amendment are "'personal rights which . . . may not be vicariously asserted.'"  *State v. Williams*, 485 S.W.3d 797, 800 (Mo. App. W.D. 2016) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).  "A defendant seeking to suppress evidence based on an alleged unreasonable search must demonstrate that he had a legitimate expectation of privacy in the place searched."  *Shumate v. State*, 515 S.W.3d 824, 829 (Mo. App. W.D. 2017).  "This standard involves a two-part inquiry:  (1) whether the defendant by his conduct has exhibited an actual (subjective) expectation of privacy" in the place or thing searched, *id.*; and (2) "that expectation of privacy must be objectively 'reasonable' or 'legitimate[.]'"  *Williams*, 485 S.W.3d at 801 (quoting *State v. McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981)).  "'Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'"  *Id.* (quoting *Rakas*, 439 U.S. at 143 n.12).

Demark fails to demonstrate that he had a legitimate expectation of privacy in the communications he voluntarily delivered to unknown third parties using Google and Craigslist. Although, generally, electronic communications are considered effects similar to mail and carry a legitimate expectation of privacy, the expectation changes upon a person's voluntary decision to send such communications to a stranger on the internet. *Plunkett*, 473 S.W.3d at 176 ("a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." (internal quotation marks omitted)). "An individual does not have a legitimate expectation of privacy in items or areas that are exposed to the public, abandoned, or accessed by consent." *Shumate*, 515 S.W.3d at 829 (internal quotation marks omitted). In this case, some of Demark's electronic communications obtained pursuant to the disputed warrant were posted publicly on Craigslist and others were voluntarily turned over to third parties who were strangers to Demark, thus removing any legitimate expectation of privacy he might have had therein.

Because Demark fails to show he had a legitimate expectation of privacy in the communications, he has no standing to mount a successful Fourth Amendment challenge. Therefore, the trial court did not clearly err in *partially* overruling Demark's motion to suppress.[5]

## V.

Finally, in Point V, Demark complains that the trial court erred in overruling his objections to Detective Cates's testimony about his training and experience because the State did

---

[5] "Under the severance doctrine, any invalid portions of a search warrant are 'redacted' or 'severed' from the valid portions so long as the invalid portions can be meaningfully severed from the valid portions and have not created an impermissible general warrant." *State v. Douglass*, 544 S.W.3d 182, 190 (Mo. banc 2018). Here, Detective Cates testified that he could not limit the dates of the search warrants because some of the electronic records from the relevant time period (May 19-30, 2015) would only be organized as a block of data and not labeled by date. We defer to the trial court's determination of his credibility and find that the trial court appropriately granted the motion to suppress as to evidence seized pertaining to dates outside the relevant time period. In all other aspects the warrants meet the particularity requirement of the Fourth Amendment, and as such, the valid portions make up the greater part of the warrant, and the trial court's application of the severance doctrine was appropriate.

not disclose to the defense any records or materials concerning Detective Cates's training or prior investigations.

We review Demark's preserved claim of evidentiary error for an abuse of discretion by the trial court. *State v. Tripp*, 168 S.W.3d 667, 677 (Mo. App. W.D. 2005). "A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Gaines*, 316 S.W.3d 440, 451 (Mo. App. W.D. 2010) (internal quotation marks omitted).

Demark's claim as to training records is without merit, as he has not shown that the State possessed the documentation he sought. At the pretrial hearing on Demark's discovery motions, there was evidence that the sheriff's department did not have records of Detective Cates's training nor did the sheriff's department have access to any other entity's records on the topic of Detective Cates's training. The trial court was free to believe any part of the evidence at the hearing, *State v. Trenter*, 85 S.W.3d 662, 674 (Mo. App. W.D. 2002), and in so doing, the trial court was free to believe that the State did not possess the records requested by Demark. The State is not required under Rule 25.03 or 25.04 to disclose evidence that it does not possess. *State v. Mauchenheimer*, 342 S.W.3d 894, 898 (Mo. App. W.D. 2011). Furthermore, Demark fails to show on appeal how Detective Cates's alleged training materials would have aided in his defense. The trial court did not abuse its discretion in overruling Demark's objections to Detective Cates's *testimony* about his training while employed in previous years by a different law enforcement entity.[6]

---

[6] In multifarious form, Demark additionally claims in this point that the trial court erred in admitting Detective Cates's *testimony* about his experience as an expert in matters relevant to the subject investigation. This claim was not preserved by inclusion in his motion for new trial. Therefore, though we exercise our discretion to comment upon this multifarious argument, our review is for plain error. "To hold that a miscarriage of justice or a

15

Point V is denied.

## Conclusion

The judgment of the trial court is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Anthony Rex Gabbert, Judges, concur.

---

manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *State v. Kunonga*, 490 S.W.3d 746, 755 (Mo. App. W.D. 2016) (internal quotation marks omitted). Here, *none* of the electronic communications between Detective Cates (posing as Mika) and Demark were disputed, and it is those communications that were the extent of Detective Cates's involvement in the case and Demark's corresponding conviction. Since the communications were never disputed by Demark, Demark simply cannot assert any manifest injustice related to the Detective's training prior to the subject electronic communications with Demark. Thus, this additional claim of error fails as well.

16