

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36437 |
| | ) | Filed: December 23, 2020 |
| JAMES DARRON BEERBOWER, JR., | ) | |
| | ) | |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF REYNOLDS COUNTY

Honorable Kelly W. Parker, Judge

**<u>AFFIRMED</u>**

James Darron Beerbower, Jr. ("Beerbower") appeals his convictions, following a jury trial, of three counts of first-degree child molestation. In three points on appeal, Beerbower argues that the trial court: (1) abused its discretion and erred in allowing forensic interviewer Danielle Cochran to testify and equate idiosyncratic details, sensory details, and consistency with truthfulness; (2) plainly erred in failing to *sua sponte* exclude testimony from forensic interviewer Corrie Dudley in that despite there being no physical evidence of abuse in the SAFE exams, she still made a diagnosis of "child sexual abuse"; and (3) plainly erred in submitting Instruction No. 5 for Count I, because this was a multiple acts case, and the instruction failed to inform the jury as to which act they must unanimously agree occurred. Finding no merit to any of Beerbower's points, we deny the same and affirm the judgment of the trial court.

**Facts and Procedural History**

Beerbower does not challenge the sufficiency of the evidence to support his convictions. We recite the evidence adduced at trial (and the reasonable available inferences therefrom) in the light most favorable to the verdict. *See State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). We recite other information as necessary for context.

Beerbower had a familial relationship with two children ("Victim 1" and "Victim 2"), whom he sexually abused in February and March 2017 when both Victims were 11 years old.

The abuse was reported on March 30, 2017, and Victims were interviewed the next day at the Child Advocacy Center. Thereafter, both victims underwent SAFE exams.

Beerbower was charged, by second felony information, as a prior offender, with the class A felony of child molestation in the first degree (Count I – Victim 1) for an incident occurring on or between February 1, 2017 and March 30, 2017, pursuant to section 566.067;[1] the class A felony of child molestation in the first degree (Count II – Victim 2) for an incident occurring on or about March 27, 2017, pursuant to section 566.067; and the class A felony of child molestation in the first degree (Count III – Victim 2) for an incident occurring on March 27, 2017, pursuant to section 566.067.[2]

A one-day jury trial occurred on September 13, 2019. Danielle Cochran ("Cochran"), a forensic interviewer, testified regarding her interviews with Victims. During direct examination by the prosecutor, the following colloquy took place:

---

[1] All references to statutes are to RSMo Noncum.Supp. 2014 (effective January 1, 2017), unless otherwise indicated.

[2] The Count I child molestation charge (Victim 1) was filed in Case No. 17RE-CR000-70-01. The Count II and III charges (Victim 2) were filed in Case No. 17RE-CR00071-01. On January 14, 2019, the State filed a "Motion for Joinder" of these two cases citing that "[e]ach of these offenses is based on two or more acts or transactions connected together or constituting parts of a common scheme or plan[,]" and that "[j]oinder is required where the offenses to be joined are part of a common scheme and part of a single or continuing motive." On January 15, 2019, the trial court sustained the motion.

[PROSECUTOR:] AND BEFORE I ASK YOU ABOUT THOSE RECORDINGS SPECIFICALLY ARE THERE ANY TYPES OF THINGS THAT YOU LOOK FOR IN A CHILD'S TESTIMONY TO HELP YOU DETERMINE WHERE TO GO WITH AN INTERVIEW? WHAT TYPES OF PLACES YOU NEED TO GO WITHIN AN INTERVIEW?

[COCHRAN:] YES. WELL FIRST IT WOULD BE THEIR TYPE OF DISCLOSURE, HOW THAT IS OCCURRING WITHIN THE INTERVIEW. DIFFERENT THINGS I LOOK FOR WHILE THE INTERVIEW IS GOING ON IS IDIOSYNCRATIC DETAILS WHICH IS A VERY LONG WORD BUT IDIOSYNCRATIC DETAILS MEANS DETAILS THAT WOULD TALK ABOUT HOW THE CHILD THOUGHT, LIKE WHAT THEY WERE THINKING, HOW THEY WERE FEELING OR ANY PERSONALIZED DETAILS TO THE CHILD. I ALSO LOOK FOR SENSORY DETAILS, WE ALL KNOW OUR SENSES, SEE, TASTE, THOSE ARE TACTILES EXPERIENCED BASED DETAILS THAT USUALLY ONLY COME FROM EXPERIENCED BASED EXPERIENCES, THOSE WOULD BE AGAIN SEE, HEAR, TASTE, SMELL, FEEL. I ALSO LOOK FOR CONSISTENCY WITHIN THE INTERVIEW ITSELF. IN OTHER WORDS IS THERE CONTRADICTIONS, HOW IS IT GOING WITHIN THE INTERVIEW, BECAUSE MY JOB ISN'T TO CONFIRM OR DENY ANYTHING THAT THEY SAID BEFORE, IT'S JUST WHAT HAPPENS IN THE INTERVIEW. AND THEN THEIR MOTIVE OR LACK OF MOTIVE TO FABRICATE OR MAKE SOMETHING UP WITHIN THE INTERVIEW, I LOOK FOR ALL OF THOSE THINGS.

[PROSECUTOR:] AND GOING BACK TO THE IDIOSYNCRATIC DETAILS, SPECIFICALLY YOU SAID THOUGHTS, FEELINGS AND PERSONALIZED DETAILS WITH REGARD TO EVENTS?

[COCHRAN:] CORRECT.

[PROSECUTOR:] WHY DO THOSE THINGS MATTER?

[COCHRAN:] THOSE ARE JUST ANOTHER THING THAT WHEN PEOPLE MAKE UP STORIES SOMETIMES THEY MAY OR MAY NOT . . .

[DEFENSE COUNSEL:] JUDGE I'M GOING TO OBJECT. I DON'T THINK SHE CAN TESTIFY WHETHER OR NOT A STORY IS TRUTHFUL. I MEAN SHE SEEMS LIKE SHE'S TALKING ABOUT A STORY, IT'S NOT ANYTHING SPECIFIC OR SCIENCE BASED THAT SHE'S TALKING ABOUT AND I DON'T THINK SHE'S BEEN QUALIFIED AS AN EXPERT ON TRUTHFULNESS.

THE COURT: OVERRULED.

[PROSECUTOR:]  YOU MAY ANSWER.

[COCHRAN:]   SO IDIOSYNCRATIC DETAILS AGAIN WOULD BE EXPERIENCED BASED DETAILS THAT ONE MAY NOT THINK TO MAKE UP OR FABRICATE BEFORE THEY WERE EVER ASKED AND THEN THEY ARE ASKED AND OH JAMBLE [SIC] TO GET SOMETHING MADE UP, BECAUSE THEY ARE VERY I GUESS NOT SOMETHING THAT PEOPLE THINK ABOUT WHEN THEY GO TO MAKE STUFF UP.

[PROSECUTOR:]  AND THEN SENSORY DETAILS WHY ARE THOSE IMPORTANT?

[COCHRAN:]  AGAIN THE TACTILE EXPERIENCED BASED AND ALSO JUST FOR RECALL, MORE DETAIL OF THE EXPERIENCE THEMSELVES OR THE EXPERIENCE THAT THEY HAD OR DIDN'T HAVE ARE THOSE DETAILS THERE DO THEY MATCH UP WITH WHAT COULD ACTUALLY HAPPEN, THOSE TYPE THINGS.

[PROSECUTOR:]  AND THEN CONSISTENCY WITHIN THE INTERVIEW ITSELF WHY IS THAT IMPORTANT?

[COCHRAN:]   AGAIN TO SHOW WHETHER THEY ARE BOUNCING BACK AND FORTH. IT'S, I THINK WE'VE ALL HEARD IT'S HARD TO KEEP A LIE STRAIGHT, BUT TO REALLY CONTINUE THEIR STORY IN A WAY THAT DOESN'T CONTRADICT ANYTHING THAT THEY SAY INSIDE THE INTERVIEW.[3]

During cross-examination, the following colloquy took place:

[DEFENSE COUNSEL:]   OKAY.   NOW YOU SAID YOU ASKED QUESTIONS ABOUT SENSORY DETAILS, TACTILE THINGS, BECAUSE THOSE ARE THINGS THAT MAY MAKE SOMEBODY'S STORY MORE TRUE?

[COCHRAN:]  YES.

[DEFENSE COUNSEL:]   OKAY AND YOU ASKED THOSE QUESTIONS IN THIS CASE?

[COCHRAN:]  CORRECT.

---

[3] We recite from the transcript as it appears in the record, including the use of all capital letters.  We strongly discourage the submission of transcripts in this format due to the difficulty in reading.

[DEFENSE COUNSEL:] AND IN [VICTIM 1]'S INTERVIEW HE RESPONDED THAT HE DIDN'T REMEMBER SMELLING OR TASTING ANYTHING WHEN HE WAS BEING ABUSED?

[COCHRAN:] I BELIEVE SO.

[DEFENSE COUNSEL:] OKAY. AND WHEN YOU ASKED [VICTIM 2] ABOUT . . . SENSORY DETAILS ABOUT ANY TYPE OF ABUSE DO YOU RECALL FROM WATCHING THAT VIDEO HER MENTIONING ANY SENSORY DETAILS? TASTE, TOUCH, SMELLS, THOSE KIND OF SENSORY DETAILS?

[COCHRAN:] YES.

[DEFENSE COUNSEL:] OKAY AND SHE MENTIONED ONE OF THOSE?

[COCHRAN:] SHE MENTIONED MORE THAN ONE.

. . . .

[DEFENSE COUNSEL:] . . . YOU DON'T DETERMINE THE CREDIBILITY OF ANY OF THE KIDS YOU TALK TO?

[COCHRAN:] I DO NOT.

[DEFENSE COUNSEL:] OKAY YOU DON'T WRITE A REPORT THAT SAYS THIS CHILD'S TELLING THE TRUTH OR THIS CHILD'S NOT TELLING THE TRUTH?

[COCHRAN:] CORRECT.

[DEFENSE COUNSEL:] OKAY YOU DON'T HAVE ANY TRAINING ON DETERMINING WHETHER OR NOT THEY ARE TELLING THE TRUTH?

[COCHRAN:] I DO NOT HAVE, THAT'S NOT PART OF MY JOB.

The State rested its case. Beerbower presented evidence and witnesses in his own case in chief, and testified in his own defense. After Beerbower presented his first witness, the parties agreed to proceed with the jury instruction conference due to time constraints. There were no objections to any of the instructions tendered by the parties, including the State's verdict director

5

(Instruction No. 5). When the trial court asked about objections to Instruction No. 5, defense counsel specifically stated: "No objection." Near the conclusion of the instruction conference, the trial court stated, "I understand everybody is in agreement to the verdict forms as submitted?" The State and defense both responded in the affirmative.

Beerbower then called Corrie Dudley ("Dudley"), a SAFE care provider, family nurse practitioner, and a forensic interviewer.[4] Dudley testified that she conducted SAFE exams on the Victims. Dudley stated that although she did not find any abnormalities during either victim's exam, this was "very typically expected." Dudley further testified that "a normal exam doesn't mean that a child hasn't been abused, it doesn't mean that a child has been."

Dudley confirmed she did not have any training on determining whether a child she examines for possible abuse is telling the truth. Defense counsel asked, "So the veracity of the kid's statements, that's not something that you note or try to discern?" Dudley responded:

> NO THAT'S NOT MY JOB IN TAKING CARE OF THEM AND EVEN ANY OTHER KIND OF HEALTH THAT I DO IF I SEE SOMEBODY COMES INTO MY OFFICE I ASSUME THAT YOU'RE TELLING ME THE TRUTH. AS A MEDICAL PROVIDER THERE'S THAT TRUST, THAT YOU'RE GOING, I'M GOING TO TREAT YOU BASED ON THE THINGS THAT YOU TELL ME AND THERE'S AN EXCEPTION THAT I WILL NOT TELL PEOPLE THINGS THAT YOU TELL ME. UNFORTUNATELY WHEN KIDS TELL THINGS THEN THAT DOESN'T HAPPEN. I DON'T GET TO GIVE THEM THAT PRIVACY.

On cross-examination by the State, Dudley confirmed that she developed a medical diagnosis from the totality of the examination, including the patient's history and physical examination. Dudley testified that her medical diagnoses for Victims 1 and 2 were "child sexual abuse." She indicated that those diagnoses were based "not on the physical finding" but rather on

---

[4] Dudley also obtained her doctorate in nursing and is sometimes referred to as "Dr. Dudley" in the record.

the Victims' disclosures of abuse, "[her] knowledge that it's normal to not have any physical findings," and on her "medical and professional training and experiences[.]"

The jury found Beerbower guilty on all three counts of child molestation. The trial court sentenced Beerbower to three concurrent life sentences.

Beerbower filed a motion for new trial, and after hearing argument, the trial court overruled the motion. This appeal followed.

In three points on appeal, Beerbower asserts:

1.  The trial court abused its discretion in "allowing 'forensic interviewer' Daniel[le] Cochran to equate idiosyncratic details, sensory details, and consistency in someone's story with truthfulness," in that this "was used to improperly bolster the [Victims'] testimony and was a comment on how the existence of such details affects the truthfulness of the interviewee."

2.  The trial court "plainly erred in failing to *sua sponte* exclude testimony from 'forensic interviewer' and doctor Corrie Dudley who testified that despite not finding any physical evidence in the SAFE exam that [Victims] had been sexually abused[,] she still diagnosed them with 'child sexual abuse,'" because "this testimony showed, as the State said in closing argument, that Dr. Dudley believed 'they were sexually abused,' which is a comment on credibility of the [Victims'] story and is prohibited."

3.  The trial court plainly erred "in submitting Instruction No. 5, the verdict director for Count I, to the jury," because "there were at least two distinct acts of [sexual] contact making it a multiple acts case and the verdict director failed to instruct the jury on which act they needed to unanimously agree on thereby allowing the possibility that the jurors failed to unanimously agree on one specific act."

**Standard of Review**

A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal. Generally, a circuit court's decision will be considered an abuse of discretion when it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.

*State v. Carpenter*, 605 S.W.3d 355, 358–59 (Mo. banc 2020) (internal quotations and citations omitted).

7

Our review for plain error is "discretionary." ***State v. Wood***, 580 S.W.3d 566, 579 (Mo. banc 2019).

> The threshold issue in plain error review is whether the circuit court's error was facially evident, obvious, and clear. If the appellant establishes a facially evident, obvious, and clear error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice. To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative.

***Id.*** (internal quotations and citations omitted).

**Analysis**

***Point I: Forensic Examiner Cochran's General Testimony***

In his first point, Beerbower argues that the trial court abused its discretion in "allowing 'forensic interviewer' Daniel[le] Cochran to equate idiosyncratic details, sensory details, and consistency in someone's story with truthfulness," in that this "was used to improperly bolster the [Victims'] testimony and was a comment on how the evidence of such details affects the truthfulness of the interviewee."

> Trial courts have broad discretion in determining the admissibility of evidence. When this Court is asked to review the admissibility of evidence, it reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. When determining the admissibility of opinion testimony, expert witnesses should not be allowed to give their opinion as to the veracity of another witness's statement, because in so doing, they invade the province of the jury.

> In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized. General testimony describes a generalization of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused. The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible.

8

*State v. Churchill*, 98 S.W.3d 536, 538–39 (Mo. banc 2003) (internal quotations and citations omitted) (footnotes omitted).

Here, Cochran's testimony was general (and not particular), in that it did not attest to the credibility of the Victims in this particular case.[5] *See id.* at 538–39; *State v. Thomas*, 290 S.W.3d 129, 132-35 (Mo.App. S.D. 2009). Beerbower fails to demonstrate that the trial court abused its discretion in failing to exclude Cochran's testimony, and his Point I is accordingly denied.

### Point II: Dudley's Testimony Regarding SAFE Exam

In his Point II, Beerbower asserts that the trial court "plainly erred in failing to *sua sponte* exclude testimony from 'forensic interviewer' and doctor Corrie Dudley who testified that despite not finding any physical evidence in the SAFE exam that [Victims] had been sexually abused[,] she still diagnosed them with 'child sexual abuse,'" because as the "State said in closing argument, that Dr. Dudley believed 'they were sexually abused,' which is a comment on the credibility of the [Victims'] story and is prohibited."

As the record reflects—and as Beerbower concedes in his brief— Beerbower failed to lodge a timely objection or request for relief.

We can be brief. Dudley was Beerbower's own witness. He did not object to her testimony in question. In these circumstances, we fail to see how a trial court evidently, obviously, and clearly errs in admitting defense-witness testimony to which defense counsel did not object. Point II is denied.

---

[5] The record reflects that the trial court sustained an objection to *defense counsel's questioning*, on the basis that defense counsel was "attempting to ask the witness if she believes the story was or the other interviewee was credible[.]"

9

In Point III, Beerbower asserts that the trial court plainly erred "in submitting Instruction No. 5, the verdict director for Count I, to the jury," because "there were at least two distinct acts of [sexual] contact making it a multiple acts case and the verdict director failed to instruct the jury on which act they needed to unanimously agree on thereby allowing the possibility that the jurors failed to unanimously agree on one specific act."

The record reflects that Instruction No. 5 was offered by the State, and read as follows:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or between February 1, 2017 and March 30, 2017, in the State of Missouri, the defendant caused [Victim 1] to touch defendant's genitals by placing his penis in [Victim 1]'s mouth, and

> Second, that defendant did so for the purpose of defendant's sexual desire, and

> Third, that [Victim 1] was a child less than twelve years of age, and

> Fourth, that in the course of this conduct, the defendant did so knowing that [Victim 1] was the defendant's descendant by blood,

> then you will find the defendant guilty under Count I of child molestation in the first degree under this instruction.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

At the jury instruction conference, the following discussion as relevant to this instruction occurred:

> THE COURT: . . . NEXT SUBMISSION IS BY THE STATE THE VERDICT DIRECTOR AS TO COUNT I, 420.20, CHILD MOLESTATION IN THE FIRST DEGREE, ANY OBJECTION?

[DEFENSE COUNSEL:] NO OBJECTION.

THE COURT: THAT WILL BE GIVEN AS INSTRUCTION NUMBER 5 REFERENCING AS TO COUNT I. NEXT SUBMISSION IS BY THE DEFENDANT, 408.02 CONVERSE INSTRUCTION AS TO COUNT I REFERENCING INSTRUCTION NUMBER 5. ANY OBJECTIONS BY THE STATE?

[PROSECUTOR]: NO OBJECTION JUDGE.

The trial court thereafter confirmed with the parties that, "I understand everybody is in agreement to the verdict forms as submitted?" The State and defense counsel both responded in the affirmative.

In *State v. Celis-Garcia*, 344 S.W.3d 150, 155-56, 158 (Mo. banc 2011), our Supreme Court recognized a defendant's right to a unanimous jury verdict in a multiple acts case—*i.e.*, where "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count[,]" such that the jury be instructed that they are required "to agree which of those acts the defendant committed."

It has since been observed that *Celis-Garcia* variety "[c]laims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state's instructions may have been motivated by reasonable trial strategy." *State v. Ess*, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part and dissenting in part). Indeed, our Supreme Court thereafter issued *Hoeber v. State*, 488 S.W.3d 648, 660 (Mo. banc 2016), in which the Court specified that "***In the absence of reasonable trial strategy***, trial counsel's failure to object to the insufficiently specific verdict directors did not conform to the degree of skill, care, and diligence of a reasonably competent attorney." *Id.* at 660 (emphasis added).

A plain-error claim places a much greater burden on a defendant than an assertion of prejudicial error. A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice. To prove plain instructional error, the

11

defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict. Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal. The outcome of plain-error review depends heavily on the facts and circumstances of each case.

*State v. Stuckley*, 573 S.W.3d 766, 768 (Mo.App. S.D. 2019) (internal quotations and citations omitted). "When considered on direct appeal, a trial court does not commit plain error for failing to take action *when the record clearly indicates* that the defendant's counsel strategically allowed that action." *State v. Snyder*, 592 S.W.3d 375, 381 (Mo.App. S.D. 2019) (emphasis in original).

In the instant matter, the record reflects that defense counsel's overall trial strategy was to show that the allegations of Victims were, as a whole, not credible, and to seek an outright acquittal. There was evidence of multiple acts of molestation against Victim 1 (in the manner described in Instruction No. 5)—if defense counsel objected on jury-unanimity grounds, this could very well have resulted in the submission of multiple alternative verdict directors to accommodate the multiple evinced instances of molestation by Beerbower against Victim 1. This was unlikely to serve defense counsel's strategy of presenting Victim 1 as not credible, and ran the substantial risk of simply reminding the jury of pervasiveness and magnitude of Beerbower's acts of molestation against Victim 1.

Defense counsel's evident strategy was not to ensure that the jury unanimously agreed on the specific instance of molestation Beerbower committed against Victim 1 in Count I—rather, defense counsel's strategy was to argue that the allegations of molestation were entirely fabricated, and to obtain an outright acquittal on all counts. While defense counsel's strategy was ultimately unsuccessful, Beerbower does not demonstrate that it was unreasonable.

Beerbower fails to demonstrate that the trial court committed plain error resulting in manifest injustice or miscarriage of justice. *See **Snyder***, 592 S.W.3d at 381. Beerbower's Point III is accordingly denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - CONCURS

DANIEL E. SCOTT, J. - CONCURS